JOSEPH GUNN *vs.* W. S. LAUDER.

Opinion filed Nov. 21, 1901.

**Mandamus to Judge—Disqualification—Failure to Call on Other Judge—Return—Evidence.**

In the exercise of its superintending control over courts of inferior jurisdiction, an alternative writ issued out of this court, and was served upon the respondent in this proceeding. The affidavit upon which the alternative writ issued stated in effect, that the respondent had failed and neglected to call in the judge of another district to preside in the plaintiff's cases involved herein, and in which the respondent was disqualified to preside, under the provisions of § 5454a, Rev. Codes 1899. Pursuant to the requirements of the writ, respondent showed cause by answer to said writ before this court at a regular term thereof, which convened at Grand Forks on September 17, 1901. Issues of fact were framed by the answer, whereupon both sides submitted affidavits and proof upon such issues, and thereafter the matter was finally submitted to this court for determination. *Held*, upon the evidence and upon all of the facts and considerations set out in the opinion, that the respondent has neglected to request, arrange for, and procure the attendance of a judge of another district to try the cases involved herein, as he is required to do by said §5454a, and that respondent has not shown cause why he should not be required to attend to such duty. *Held*, further, upon the law and upon the facts as stated in the opinion, that a peremptory writ of mandamus will issue out of this court, requiring the respondent to forthwith perform the duty imposed upon him by said statute with respect to the cases involved in this proceeding.

Application of Joseph Gunn and others for a writ of mandamus to W. S. Lauder, judge of the district court of the Fourth judicial district for the County of Richland.

Writ granted.

*McCumber, Bogart & Forbes,* for plaintiffs.

*W. S. Lauder* and *Tracy R. Bangs,* for respondent.

WALLIN, C. J. In this proceeding an alternative writ of mandamus issued out of this court and was served upon the respondent on the 18th day of July, 1901. In substance the writ required the respondent forthwith to obey the command of the writ, or show cause why he should not do so, before this court, at the city of Grand Forks, on the 18th day of September, 1901. On the return day the respondent showed cause by serving and filing an answer to the alternative writ, whereby certain issues of fact were framed. Later in the term the respective parties submitted affidavits upon the issues of fact, and after an oral argument the matter was submitted to this court, upon written briefs, for final determination. The alternative writ, omitting the title, is as follows: "The State of North Dakota to the Hon. W. S. Lauder, as Judge of the District Court of the Fourth Judicial District in and for the County of Richland and State of North Dakota, Greeting: Whereas, it manifestly appears to us by the affidavit of P. J. McCumber, on the part

of said plaintiffs and the parties beneficially interested herein, that the Hon. W. S. Lauder is the judge of said district court; that the said plaintiffs are parties respectively, in the several actions pending in the district court of the Fourth judicial district in and for the county of Richland and state of North Dakota, and on the calendar of said district court for trial at the regular July, 1901, term of said court; that a jury has been impaneled for said term of court; that nearly all of the actions mentioned in said affidavit in which said plaintiffs are interested, respectively, as parties, were on the calendar of said district court for trial at the January, 1901, term of said court, and on previous term calendars; and that some of said actions have been pending for several years; and it further appearing that under the provisions of § 5454a of the Revised Codes of North Dakota, 1899, the said plaintiffs have filed affidavits and undertakings in the respective cases in which they are parties, and requested the above-named defendant, as judge of said district court, to procure the attendance of another judge to preside in the trial of said actions in accordance with the provisions of said section; that at said July term of said district court, and at previous terms of said district court, the judge thereof has refused and neglected to forthwith procure the attendance of another judge, but has so arranged the trial calendar that only those cases which are triable by him are placed for trial at such terms to be tried before any cases in which such affidavits have been filed, and has refused to cause the said actions to be tried in the order in which issue has been joined, and has in previous terms discharged the jury without completing the trial of cases in which affidavits have been made as aforesaid, and that the said judge is about to discharge the jury so impaneled at the close of the trial of cases so to be tried by him in said July term, and without trying the cases in which affidavits have been made as aforesaid; that said judge has failed and neglected to use proper means to secure the attendance of another judge for the trial of such actions in said July, 1901, term, and that by his acts the trial of such cases has been and are being unnecessarily delayed, to the great injury and damage of said plaintiffs; that the said plaintiffs, through their attorneys, have requested the said judge to call in and procure another judge for the trial of such actions, and that the said judge has failed to so do; that thereupon the said plaintiffs gave notice through their said attorneys that such affidavits and applications for the substituted judge would be withdrawn in case the said judge did not secure the attendance of another judge to preside in the trial of said actions, and would ask that the judge of said district court would proceed to try the same; and that the judge of said district court has announced that he would not try any of such cases, and has further announced that he would discharge the jury without the trial of any such actions, or would continue the term over until sometime in the fall. The plaintiffs have no other adequate remedy at law than the allowance of a writ of mandamus and prohibition as prayed for in said affidavit of P. J. McCumber:

Now, therefore, we command you that immediately after the receipt of this writ you proceed forthwith to request, arrange for, and call in another judge to preside at the trial of all of the actions above entitled wherein affidavits of prejudice have been filed pursuant to § 5454a, Revised Codes, and, in case such affidavits of prejudice and application for a change of judges shall be withdrawn in any case, that you proceed to try said case or cases, or proceed forthwith to request, arrange for, and call in another judge to try the same, or that you show cause before said supreme court at the court house in the city of Grand Forks, in the County of Grand Forks and state of North Dakota, on the 18th day of September, 1901, at the hour of 10 o'clock in the forenoon of said day, or as soon thereafter as counsel can be heard, why you have not done so."

The subject-matter contained in the alternative writ will require a construction of the provisions of a statute of recent origin, and now embraced in § 5454a, Rev. Codes 1899, which reads as follows: "When either party to a civil action pending in any of the district courts of the state shall, after issue joined and before the opening of any term in which the cause is to be tried, file an affidavit, corroborated by the affidavit of his attorney in such cause and that of at least one other reputable person, stating that there is good reason to believe that such party cannot have a fair and impartial trial of said action by reason of the prejudice, bias or interest of the judge of the district court in which the action is pending, the court shall proceed no further in the action, but shall forthwith request, arrange for and procure the judge of some other judicial district of the state to preside at said trial in the county of the judicial subdivision in which the action is pending. The actual expenses of such judge while in attendance upon the trial of the cause for which the change was had and the extra expense of the court and jury, incurred by reason of said change, shall be paid by the person asking for the change, in advance, or a bond to be approved by the clerk of the district court given therefor, the amount of said bond being fixed by the presiding judge; provided, that not more than one such change shall be granted on application of either party." It appears from the recitals in the alternative writ that the substance of the charge as made by the plaintiffs against the respondent is that the respondent has persistently and wilfully neglected and refused to request and arrange for and procure the attendance of a judge of some other judicial district to preside at the trials of cases in Richland county in which affidavits of prejudice and undertakings have been filed pursuant to the statute above set out. In support of this accusation, as well as by way of defense against the same, voluminous affidavits have been submitted to this court by the respective parties setting out divers matters of fact having reference not only to cases on the trial calendar of the district court for Richland county at the term which convened on the 2d day of July, 1901, but also to cases on the trial calendar at previous terms of said court,

viz. those convening in said county in January, 1900, in July, 1900, and in January, 1901. It is the theory of the plaintiffs' counsel that the affidavits and proofs submitted to this court tend to show that at the terms of court which convened prior to the July, 1901, term, the respondent wilfully neglected and refused to call in another judge to try cases in which the respondent was disqualified to preside under said statute; while, upon the other hand, it is claimed in behalf of the respondent that the evidence submitted to this court shows to the contrary, and tends to establish the fact that the respondent fully discharged the duties imposed upon him · by the statute at such prior terms of court. The proofs submitted in plaintiff's behalf touching the respondent's conduct and his mental attitude towards counsel for these plaintiffs, as manifested by the respondent at said prior terms of court, was offered for the evident and avowed purpose of showing the animus of the respondent, and to show that the respondent, in neglecting and refusing to call in an outside judge to preside in the so-called "prejudice cases" which were on the calendar for trial at said July, 1901, term, did so deliberately, and from motives of malice and personal hostility toward counsel for the plaintiffs. But in disposing of the case this court has put aside and wholly disregarded the mass of testimony bearing upon either the conduct or the animus of the respondent as manifested at terms of court anterior to that of July, 1901. Nor shall we attempt to analyze, in the light of the evidence, the facts occurring at terms of court prior to said July term, with a view to locating responsibility or fixing blame. From the court's point of view, the legal question which must be solved in this proceeding is within a narrow compass, and is one which, from the nature of the remedy sought, is clear-cut and sharply defined. Nor is the court embarrassed in this case by any controversy concerning any of the facts which we deem to be essential to a proper decision of the case. These facts may be briefly stated: It appears that all or nearly all of the array of cases involved, and in which the plaintiffs herein were respective parties, were on the trial calendar at a term of the district court for Richland county held in the month of January, 1901. A large majority of such cases were jury cases, and a relatively small number were equity cases, triable to the court. It is conceded that the respondent, under said statute, was disqualified to preside at the trial of any of the cases in question; and, the cases being upon the term calendar at said January, 1901, term, it follows that the respondent, who is the resident judge, and who presided at said January term, was fully advised of the fact that he could not lawfully preside at the trial of any of said cases at the July term. Nor is this proposition controverted by the respondent. Respondent admits that under said statute he was without authority to try any of said cases, and further concedes that he was required by the terms of the statute in each and all of them to request, arrange for, and procure the judge of some other judicial district to preside at the trial of said cases. Nor do counsel differ at all as to the interpreta-

tion which should be placed upon the language of the statute. Both
sides agree that, with respect to the cases involved here, the re-
spondent had a duty to do, the performance of which was specially
enjoined by law; and counsel practically agree, also, that if per-
formance was in fact neglected or refused by respondent, as charged,
the writ of mandamus could be invoked to compel the performance
of such duty. An attentive perusal of the statute cited shows that
the duty required of the judge who is disqualified is clearly set out,
and is one not difficult of comprehension. The duty enjoined by
the statute is administrative in its nature, and one which, in its
performance, requires the exercise of only ordinary common sense
and judgment. It is true that conditions sometimes exist where the
mandate of the statute cannot be fully executed within a limited
period of time; that is to say, the attendance of another judge to
try a case or cases may not be procured or procurable within a limited
period. The statute provides no machinery whereby the attendance
of an outside judge can be compelled by the judge who is dis-
qualified. Nothing of the kind is contemplated by this enactment.
Nevertheless, we can see no unsurmountable obstacles which can
prevent a full performance of all the duties enjoined by this statute
upon the judge who is disqualified. He is required to request and
arrange for the attendance of another judge and the terms of the
requirement are, also, that he shall do so "forthwith." But the term
"forthwith,". as contained in this statute, while it requires prompt-
ness of action, does not demand the impossible. The term "forth-
with," in statutes regulating official duties, has generally been con-
strued as meaning that the duty is to be performed promptly and
with all convenient dispatch," but this requirement is always modi-
fied by the circumstances and the nature of the duty to be performed.
See *Anderson* v. *Goff* (Cal.) 13 Pac. Rep. 73; *Moffat* v. *Dickson,*
3 Colo. 313. The duty required by § 5454a is that the judge who is
disqualified shall, after the statute has been fully complied with by
the moving party, proceed promptly, diligently, and in good faith
to request and arrange for the attendance of another judge to pre-
side at the trial of the case or cases in which he cannot sit. There
are at present seven district judges in the state, all of whom, under
the statute, are qualified, upon proper request so to do, to perform
judicial duties outside of their respective districts. Rev. Codes,
1899, § 5179. The chief purpose of § 5454a is to secure an impartial
tribunal for every suitor in civil actions in the district court; but
a further and incidental purpose of the statute is to prevent, as
far as practicable, vexatious delays, which it appears were antici-
pated and might result from the attempt to secure such impartial
tribunal. To this end the lawmaker used words of, no doubtful
meaning. As soon as the suitor, by complying with the terms of the
statute, has placed himself within the benefits of the enactment, the
law makes provisions which are obviously designed to expedite a
hearing before an impartial tribunal. The suitor who has fully

complied with the statute is at once placed in a position where he may demand prompt and energetic action on the part of the judge who is disqualified. Nor does the law tolerate the notion that the judge who is shown to be prejudiced, and is therefore disqualified, may, either wilfully or by his dilatory action, interpose obstacles or create difficulties to be encountered by the suitor in his quest for an impartial tribunal. The words of the statute are mandatory and imperative. The tribunal which can no longer discharge judicial functions is required to take action "forthwith" in the way of request- ing, arranging for, and procuring the attendance of another judge.

We turn now to a consideration of the facts which are, in our opinion, decisive of this case. Respondent admits that he made no effort whatever to call in another judge in the vacation period which intervened between the adjournment of the district court for Rich- land county in January, 1901, and its reassembling for the July, 1901, term in that county. We think that no valid excuse is offered by the respondent for this lengthy period of inactivity. Counsel argue that it was necessary to wait until court convened in July, 1901, and until the calendar had been called for that term, before it could be known to the court what cases were for trial at the July term. We regard this excuse as inadequate to justify the respondent's failure to act in the vacation period. The array of cases (some 30 in number) in which the respondent was disqualified under the statute were at issue and on the trial calendar in January, 1901. Under the law and the practice of the district court, these cases were severally entitled to a place on the trial calendar at the July term next ensuing, and they were in fact duly placed on that calendar for trial. There arises no presumption of either law or fact that said cases, or any of them, would be settled in the interregnum. The presumption is that a case which is at issue and on the calendar and not disposed of at one term will be on the calendar for disposition at the next ensuing term, and all interested parties are required to act upon this presump- tion. Under such circumstances, the respondent was chargeable with notice that such cases would be on the calendar for trial in July, and with the further notice that suitors in said cases would, under the law, be entitled to have certain action taken by him with a view to calling in an outside judge to preside in such cases. But in this expectation suitors were grievously disappointed. No action whatever looking towards the performance of his duty in this behalf was taken by the respondent before court convened in July. Nor did the court volunteer to inform suitors on the first day of the July term that nothing had been done by him looking towards calling in another judge. Even when applied to by counsel for information upon this vitally important matter, no information was given, beyond the meager general statement that the court, when it had information to give as to this matter, would impart the same to counsel. But, as a matter of fact, the respondent had no information to impart on the first day of the July term concerning the matter, and this absence of

information is entirely referable to the respondent's own neglect to act in the premises in manner and form as the statute directs. Whatever the truth may be as to the respondent's intentions in the premises, it appears in this case that counsel for the plaintiffs became satisfied at or about the beginning of the July term that the respondent deliberately intended to disregard the order of the cases on the trial calendar of that term, and, after trying cases in which the respondent was not disqualified, proceed to discharge the jury without making arrangements for the trial of the array of cases in question; and so it turned out, as will be seen hereafter. We cannot agree with counsel who argue that the respondent rested under no particular obligation to promptly and fully advise counsel in this class of cases, as soon as court convened, what had been done, if anything, in the matter of calling in another judge to preside in such cases. It is entirely clear that counsel in these cases, as in others, must be at all times ready to proceed to trial when cases are called in their order; and, to be ready, counsel are entitled to know all facts which are within the knowledge of the trial court which have a bearing upon the subject-matter of their preparations for trial. Hence in these cases it was the obvious duty of the respondent to inform counsel on the first day of the term that no arrangement whatever had, up to that time, been made for calling in another judge to try their cases. Counsel are not at liberty to suppress facts or information which has a bearing upon the duties of the presiding judge, and this salutary rule, we think, applies with equal force to the presiding judge.

Reverting to the term of court which convened on July 2, 1901, we will now inquire what the respondent did, and what he omitted to do, after court convened, relative to calling in another judge in these cases. Upon this point we shall quote at length from the brief of respondent's counsel. The court announced that it would first try jury cases, civil and criminal, in which he could preside, after which, if possible, he would have another judge there to take up the other cases. Referring to the first day of the term, counsel say: "On this same day, as soon as the respondent could possibly estimate the time when an outside judge could be used, he wrote to Judge Pollock, of the Third district,—he being the nearest judge to the respondent,— requesting his attendance in the trial of the prejudice cases. On July 3d Judge Pollock answered, stating that it would be after the 1st of August before it would be possible for him to attend. His letter is shown as Exhibit A, attached to respondent's return. On receipt of the answer from Judge Pollock, the respondent immediately corresponded with Judge Glaspell, of the Fifth district. His answer is shown as Exhibit C, attached to the return, and shows conclusively that his atendance could not be secured. Even before receiving the reply from Judge Glaspell, and in his effort to secure the attendance of some judge to sit in the trial of cases in which affidavits had been filed, the respondent communicated with Judge Fisk, of

the First district, and received from him an answer dated July 10th, shown as Exhibit B, attached to the return, in which it is stated that it would be impossible for him to be present before the 19th of August. Immediately upon receipt of the letter from Judge Glaspell, and before hearing from Judge Fisk, the respondent communicated with Judge Kneeshaw, of the Seventh district, receiving an answer under date of July 13th, shown as Exhibit D, attached to said return, to the effect that Judge Kneeshaw could not be present until some time in August. Thus it will be seen that the respondent had been very prompt and persistent in his efforts to scure the attendance of an outside judge. The respondent then communicated with Judge Cowan, of the Second district, receiving a telegram from Judge Cowan on the 16th or 17th of July (it is immaterial which) to the effect that he had to go into the northern part of his district for a day or two, and would then come to Wahpeton." This presentation of evidence offered to show deligence on the part of the respondent must be supplemented by an affidavit made by the Honorable W. H. Winchester in plaintiffs' behalf, which, so far as material, is as follows: "I further swear that I have had no commnuications whatever from Honorable W. S. Lauder, the above-named defendant, in reference to presiding at the trial of any cases in the July, 1901, term of the district court of the Fourth judicial district, in and for Richland county, of said state. I further swear that if the said Honorable W. S. Lauder had so requested of me, and had given me a week's or ten days' notice, I believe I could have arranged my business so as to have presided in the trial of cases at such portion of the said July term as the said Honorable W. S. Lauder might have requested, and would have done so." The undisputed evidence shows that no judge from another district was in fact present at the July term, and none of the prejudice cases here involved were tried at said term. It is conceded that the respondent, after disposing of cases in which he could lawfully preside, discharged the jury and adjourned the term until October 15, 1901; and respondent alleges in his answer that he had arranged with Judge Fisk, of the First district, to preside at the trial of court cases at said adjourned term, but the answer fails to show that an arrangement had been made for the trial of any of the numerous jury cases involved in this proceeding. No such claim is made.

The circumstances attending the adjournment of the July term must be stated, for the reason that it is strenuously contended in behalf of the respondent that such adjournment, in the surrounding conditions, was a sound and proper exercise of the discretion vested in all courts, viz.: the discretion to adjourn court either for a short or a long period, as the court may, in the exercise of sound discretion, determine. It apears that one of the plaintiff's attorneys was in court immediately preceding the adjournment, and then and there, in a respectful manner, earnestly remonstrated against the adjournment then about to be made, and urged the respondent to refrain from any adjournment of court

at that time, and calling the respondent's attention to the large array of cases long delayed, and then on the calendar for trial, and in which suitors were clamoring for trial. Counsel also invited the respondent's attention to the fact that the respondent had a duty to perform with respect to calling in another judge to try these cases, and that such duty had not then been performed. But these appeals and remonstrances of counsel were unheeded by the respondent, and the district court was then adjourned despite the same; and such adjournment was made after a telegram was received by respondent from Judge Cowan which, in effect, definitely informed the respondent that he (Judge Cowan) would be at liberty to attend and hear these cases on the request of the respondent to do so. Under these circumstances court was adjourned, and Judge Cowan was not requested to attend and preside in the cases in question. It appears that on July 17, 1901, in Richland county, hay was in a condition to be cut and cared for, and that some of the cereals were also ready to be cut and harvested; that the jury then in attendance was largely composed of farmers, and the jury were then urging the respondent to discharge the jury, and thereby enable them to attend to their farming interests. These conditions are presented to this court as an all-sufficient excuse for the conceded nonperformance of the statutory duty to arrange for and procure another judge to try the cases in question. We are far from conceding the validity of this excuse. Terms of court are appointed by law, and the legislative assembly, representing the whole people, is presumed to have fixed the times of holding court with reference to the interest of all the people. It is to the regular judicial tribuals that the citizen and taxpayer may look, and not elsewhere, for the redress of grievances, and for the protection of life, liberty, and property. The interests of suitors are especially safeguarded by the law, and every lawyer knows that repeated and vexatious delays in the courts are often tantamount to a denial of justice. But the adjournment of the district court on July 17th is only an incident in this case pointing to the fact that at and prior to said adjournment no arrangement had been made for the trial of the cases in question; no judge had been arranged for or procured.

The writ was served the next day after the district court adjourned, and since such service the respondent has had full opportunity to show cause why he has failed to perform the duty laid upon him by the statute. Has the respondent succeeded in showing cause? We are constrained by the undisputed facts in this record to answer this question in the negative. It is conceded that no outside judge has ever apeared in Richland county to try any of these cases, except Judge Fisk alone, who was called in after said adjournment to try court cases at the adjourned term in October. No claim is made that any judge has been arranged for or procured to try the large majority of the cases, i. e. the jury cases. We have seen that the defendant wholly failed and neglected to act in the

premises at any time within the long period which elapsed between the adjournment of his court in January and when it reconvened on July 2, 1901. We have further noticed the leisurely way in which, after court convened in July, the respondent went about the duty of requesting outside judges, one at a time, to attend for the trial of these cases. Finally we have seen that, after the respondent was duly informed that Judge Cowan would attend and preside in these cases at once on respondent's request therefor, the respondent then and there promptly adjourned his court, and by such adjournment effectually defeated the very purpose for which the request had been previously made by the respondent. By this adjournment the respondent effectually defeated the very arrangement which law and duty required him to consummate, and which, professedly, at least, the respondent had attempted to consummate. But the respondent has neglected to avail himself of a privilege accorded to respondents in this class of cases. He has not attempted to show by evidence or allegation that since the alternative writ was served upon him he has proceeded to do his duty in the premises, and has in that behalf arranged to call in another judge to sit in these jury cases. It therefore appears that in such cases there is no arrangement yet made for the attendance of another judge to try the same. Nothing of the kind is claimed by counsel, but counsel offers as an excuse for this delay and disregard of the law the bald assumption that no duty rests upon the respondent to act at the present time, and that no duty in these cases is required of the respondent until court shall reconvene in Richland county in January, 1902. We think this assumption of counsel is without foundation either in reason or in the statute, and that the excuse of the respondent resting upon the assumption is evasive and wholly inadequate. From the standpoint of this court, it is very clear that a proper discharge of the duties imposed by the statute requires a resident judge who becomes disqualified to act promptly and with vigor, and continue to so act until the prescribed duty is fully performed, in so far as the resident judge can be called upon to discharge the same. On being advised by his records that he is disqualified to act judicially in such case, the resident judge should proceed to take action under the statute "with all convenient dispatch," and then not intermit his endeavors until the arrangement is consummated. When the arrangement is once fully made, the resident judge is exonerated from further blame or responsibility in the premises, and if delays thereafter occur the blame therefore cannot fall upon the resident judge. But it is obvious that in cases where issues of fact are to be tried the arrangement contemplated by this statute necessarily includes the calling in of a judge during a term of court, and this is a vital feature of any such arrangement. And, as in these cases, if it so happens that jurors in attendance at any such term are desirous of being relieved from duty and discharged from further attendance as

jurors, the local judge will not be called upon to determine or exercise discretion whether the jury ought or ought not to be discharged, to attend to their pressing private affairs. The entire responsibility in such cases must fall upon the shoulders of the incoming judge. He, and he alone, can exercise any discretion invested in the district court with respect to all cases in which he lawfully presides.

But counsel has invoked a very elementary rule of law in mandamus proceedings, requiring that the peremptory writ shall, in matters of substance, conform in its requirements to the alternative writ. Under this rule, counsel insists that no peremptory writ can issue in this case, because, as he claims, the alternative writ was issued to require the respondent to call in an outside judge to preside at the July, 1901, term, and no other term of court, and, that term being now ended and over with, it becomes according to this view of counsel, impossible to legally require the respondent to call in an outside judge for that term. But there is no basis of fact for this argument to rest upon. The relief sought in this proceeding is primarily and essentially to require the respondent to perform his statutory duty with respect to specified cases in which respondent was disqualified to preside, and which were on the calendar of the July term in 1901. When the alternative writ issued, the duty of the respondent as to such cases had not been performed, and the alternative writ directed the respondent to perform the same, or show cause why he should not do so. The proofs submitted to this court show that the same identical duty which was referred to and required to be performed by the terms of the alternative writ is still unperformed. So far as has been shown, no arrangement has yet been made for calling in a judge to try the jury cases which are referred to in the first writ. It is true that the plaintiffs hoped that the writ might so operate that a trial of these cases could be had in July. In this they were thwarted, but this circumstance in no wise militates against their right to the substance of the relief which they originally sought, and which they now are seeking at the hands of this court. There was no mandate in the alternative writ requiring respondent to call in a judge for the July term, or for any particular term of court. This will be apparent from a reading of the mandatory part of the alternative writ already set out. We can see no difficulty in this case which can prevent the issuing of the peremptory writ, and much less do we concede that such writ, when issued, will be, as counsel claims it will be, "unavailing" and "fruitless." It is further true that the ancient and stricter rule in mandamus has been relaxed by modern adjudications, under which a final writ "may be in any form consistent with the case made by the complaint presented, and embraced within the issues." See *State* v. *Weld*, (Minn.) 40 N. W. Rep. 561. The statute embraced in § 5454a, Rev. Codes 1899, is essentially a remedial statute, and no rule of construction is better established than that requiring

such statutes to be liberally construed, with a view to the attainment of the remedy contemplated by the enactment. But the rules of law which control this case have long since become firmly settled, and are therefore elementary and entirely familiar to the profession, and hence we shall not further extend this opinion by a needless citation of authority in support of our views.

Our conclusion is that the peremptory writ should issue in this case, and be served upon the respondent, and that such writ should conform substantially to the mandatory feature of the alternative writ, excepting therefrom only the order to show cause. It will be adjudged accordingly. All the judges concurring.