Ex parte JANUSZEWSKI.

(Circuit Court, S. D. Ohio, E. D.   December 4, 1911.)

No. 1,594.

**1.** HABEAS CORPUS (§ 45*)—JURISDICTION—FEDERAL COURTS.

Under Rev. St. § 753 (U. S. Comp. St. 1901, p. 592), defining when the writ of habeas corpus may issue, the repugnancy of a state statute to the state Constitution cannot authorize a writ of habeas corpus from a federal court unless petitioner is in custody by virtue of such statute, which is in conflict with the federal Constitution.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 38–45; Dec. Dig. § 45.*]

Jurisdiction of federal courts in habeas corpus, see note to In re Huse, 25 C. C. A. 4.]

**2.** HABEAS CORPUS (§ 21*) — JUVENILE ACT — PROCEEDINGS — VALIDITY — "CRIME."

The purpose of the Juvenile Act (Gen. Code Ohio, §§ 1639–1683), regulating the treatment and control of delinquent children, giving juvenile courts jurisdiction over delinquent children, defining a delinquent child as any child under 17 years of age who violates a law of the state, and providing for proceedings by affidavit and for commitment of delinquent children to the industrial school, the object of which is the reformation of its inmates as declared by sections 2083 and 2094, is to save children under the age of 17 years from conviction of crimes, and under it the state acts as a guardian of delinquent children, and the act is but an administrative police regulation, and an affidavit averring that a boy 14 years old is incorrigible, in that he shot another with intent to kill, does not charge a "crime" within Const. Ohio, art. 1, § 10, providing that no person shall be held to answer for an infamous crime except on indictment, and Const. U. S. Amend. 14, and the boy committed to the industrial school is not committed to prison, and is not entitled to a discharge on habeas corpus on the ground that his constitutional rights to prosecution by indictment have been invaded.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 19; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 2, pp. 1736–1740; vol. 8, p. 7623.]

**3.** JURY (§ 21*)—RIGHT TO TRIAL BY JURY—STATUTES—"CRIME."

An affidavit, charging that a boy 14 years old is incorrigible within Juvenile Act (Gen. Code Ohio, §§ 1639–1683), in that he had shot another with intent to kill, does not charge a crime within Const. Ohio, art. 1, §§ 5, 10, guaranteeing the right of trial by jury, and the statute is not invalid for failing to provide for a jury trial.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 7, 8; Dec. Dig. § 21.*]

**4.** CONSTITUTIONAL LAW (§ 46*)—JUVENILE COURT PROCEEDINGS—ISSUES.

Where a case against a child under the age of 17 years arose in the juvenile court, under the Juvenile Act (Gen. Code Ohio, §§ 1639–1683), the validity of section 1654, providing for the transfer of proceedings

from a justice of the peace or the police court to the juvenile court, will not be decided.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

**5. CONSTITUTIONAL LAW (§ 206*)—DUE PROCESS OF LAW—TRIAL BY JURY.**

The federal court cannot adjudge that the Juvenile Act (Gen. Code Ohio, §§ 1639–1683), regulating the treatment and control of delinquent children, and giving the juvenile court jurisdiction over delinquent children, is invalid because it does not provide for a jury trial, since the privileges and immunities of a citizen do not include the right to a jury trial in a state court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 625–648; Dec. Dig. § 206.*]

**6. CONSTITUTIONAL LAW (§ 271*)—INFANTS (§ 12*)—PROCEEDINGS IN JUVENILE COURT—RIGHT TO APPEAL.**

The federal court cannot adjudge that the Juvenile Act (Gen. Code Ohio, §§ 1639–1683), regulating the control of delinquent children, is invalid because it contains no provision for appeal or the prosecution of error from a judgment of the juvenile court, it being the settled rule in Ohio that there can be no appeal or proceeding in error from a judgment unless the right thereto is given by statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 760; Dec. Dig. § 271;* Infants, Cent. Dig. § 13; Dec. Dig. § 12.*]

Application for a writ of habeas corpus by Frank Januszewski for his discharge from imprisonment in the Boys' Industrial School. Denied, and application dismissed.

Timothy S. Hogan, Atty. Gen., and Clarence D. Laylin and Charles Follett, Asst. Attys. Gen., of Columbus, Ohio, for respondent Gerlach.

Louis Barnes, Howard H. Knapp, and Montgomery Barnes, all of Cleveland, Ohio, for petitioner.

SATER, District Judge. The petitioner complains that he is unlawfully imprisoned in the Boys' Industrial School at Lancaster, Ohio, and asks to be discharged on a writ of habeas corpus. It appeared on the hearing that this proceeding was instituted without the knowledge and against the protest of his father and immediate relatives, who desire him to remain where he is.

On March 27, 1911, an affidavit was filed in the juvenile court of Cuyahoga county, as authorized by the Ohio Juvenile Act (99 O. L. 192, sections 1639–1683, Ohio General Code), charging that the petitioner, a boy about 14 years of age, is a delinquent person in that he is incorrigible in this, to wit, that 'two days prior he unlawfully, maliciously, and purposely shot Albert Molzan, with intent to kill. Molzan, it is stated, subsequently died, but the date of his death and the circumstances surrounding it do not appear. On a hearing duly had, the allegations were found to be true, the petitioner was adjudged a delinquent, and was ordered committed to the Boys' Industrial School, to which he was removed and in which as a delinquent he is still detained. He alleges that he was charged with and committed for the crime of shooting with intent to kill, and that he was denied the right of prosecuting error or appeal from the judgment of the court, because section 1668 withholds such privilege from persons of his class. Other specific reasons assigned for his release are

that section 1648, under authority of which the affidavit against him was filed, is in derogation of article 1, § 10, of the Constitution of Ohio, in that he was held to answer for an infamous crime without presentment by a grand jury; that section 1650, by authority of which he was tried by the judge of the juvenile court, is in violation of section 1, art. 8, of the Constitution of Ohio, in that it denies him the right of trial by jury; and that by virtue of the foregoing facts not only was the juvenile court without jurisdiction to proceed in the premises in any manner whatsoever, but that, in direct contravention of the rights granted him by section 1 of the fourteenth amendment to the Constitution of the United States, he has been deprived of his liberty without due process of law and has been denied the equal protection of the laws of Ohio.

The act, which is entitled "An act to regulate the treatment and control of dependent, neglected and delinquent children," gives juvenile courts jurisdiction over delinquent, neglected, and dependent minors under the age of 17 years, not inmates of a state institution or any institution incorporated under the laws of the state for the care and correction of such children (section 1642), which jurisdiction, after the custody of the court attaches, continues for all necessary purposes of discipline and protection until the child, as a ward of the court, attains the age of 21 years (section 1643). The words "delinquent child," as defined by section 1644, include, inter alia:

"Any child under seventeen years of age who violates a law of this state or a city or village ordinance, or who is incorrigible; or who knowingly associates with thieves, vicious or immoral persons; or who is growing up in idleness or crime; or who knowingly visits or enters a house of ill repute; or who knowingly patronizes or visits a policy shop or place where any gambling device is, or shall be, operated; or who patronizes or visits a saloon or dramshop where intoxicating liquors are sold; or who patronizes or visits a public pool or billiard room or bucket shop; or who wanders about the streets in the nighttime; or who wanders about railroad yards or tracks, or jumps or catches onto a moving train, traction or street car, or enters a car or engine without lawful authority; or who uses vile, obscene, vulgar, profane or indecent language; or who is guilty of immoral conduct; or who uses cigarettes; or who visits or frequents any theater, gallery or penny arcade where lewd, vulgar or indecent pictures are exhibited or displayed. A child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person, and be proceeded against in the manner hereinafter provided."

Proceedings may be instituted by the filing of an affidavit with the court or its clerk by any person having knowledge of a child's delinquency (section 1647), on the filing of which a citation is issued requiring it, and the person having its custody or control, or with whom it may be, to appear at a stated time and place; or the judge may in the first instance issue a warrant for its arrest and subpoena witnesses to testify at the hearing (section 1648). On the day named in the citation, or upon the return of the warrant, the judge is required to proceed in a summary manner to hear and dispose of the case (section 1650), but the hearing may be continued from time to time. The judge may commit the child to the care or custody of a probation officer, may allow it to remain at its own home subject to such officer's visitation and the court's further orders, may place it

or cause it to be temporarily boarded in a suitable family subject to like supervision and order, may commit it to a training or industrial school or to any institution within the county that may care for delinquent children, or to the Boys' Industrial School, or, where it appears upon the hearing that the delinquent is 16 years of age and has committed a felony, to the Ohio State Reformatory, or to any state institution established for the care of delinquent boys, or, if a girl over the age of 9 years, to the Girls' Industrial Home, or to any state institution established for the care of delinquent girls. The child, when committed to an institution, becomes subject to the control of its trustees, who may parole it on prescribed conditions, and on their and the superintendent's recommendation may discharge it from custody, or the judge may commit it to the care and custody of a duly accredited association that will receive it, embracing in its objects the care of neglected or dependent children. Section 1652.

Other provisions of the act define the term "dependent children," and provide for their care and protection and for the punishment of those who contribute to the delinquency of minors, or who, being charged with the care, maintenance, and education of such minors, fail, neglect, or refuse to perform such duty; but the consideration of such provisions is not necessary to a disposition of this case.

[1] Whether, as is contended, the Ohio Juvenile Act is violative or not of the Constitution of Ohio, is not necessarily a federal question, and upon that point an opinion need not be expressed. The repugnancy of a statute to the Constitution of a state by whose Legislature it was enacted cannot authorize a writ of habeas corpus from a court of the United States, unless the petitioner is in custody by virtue of such statute, and unless also the statute is in conflict with the Constitution of the United States. Andrews v. Swartz, 156 U. S. 272, 15 Sup. Ct. 389, 39 L. Ed. 422; Re Burrus, 136 U. S. 586, 591, 10 Sup. Ct. 850, 34 L. Ed. 500; section 753, R. S. (U. S. Comp. St. 1901, p. 592).

[2] Under the statute, which applies to all delinquents of the prescribed age, incorrigibility is but one of many forms of delinquency. The affidavit under which the petitioner was arrested charges that he is a delinquent person because he is incorrigible, in that he shot another with intent to kill. He was heard on that charge. He was not charged with, or tried for, or convicted of, or imprisoned for, the crime of shooting with intent to kill. The evidence offered in the juvenile court must have shown that he shot as charged in the affidavit, but as he was charged with and tried for a species of delinquency only, such evidence could not, by any known rule, be used in such hearing to convict him of the crime of shooting with intent to kill. The only office which it could perform was to establish the particular kind of delinquency alleged. His commitment was not designed as and is not a punishment for crime, but to place him under suitable guardianship for proper care and discipline until he is reformed, or arrives at the age of majority. Nor is the Industrial School a prison (Prescott v. State, 19 Ohio St. 184, 2 Am. Rep. 388), or the purpose of the Juvenile Act punishment (State v. Marmouget,

111 La. 225, 35 South. 529; State v. Howard, 126 La. 354, 52 South. 539; Reynolds v. Howe, 51 Conn. 472; Farnham v. Pierce, 141 Mass. 203. 6 N. E. 830, 55 Am. Rep. 452; Petition of Ferrier, 103 Ill. 367, 43 Am. Rep. 10; Church on Habeas Corpus, § 444c. The object of the Industrial School is the reformation of those committed to its charge. Section 2083. Its inmates receive such education and are instructed in such branches of industry, agricultural or mechanical, or otherwise, as the board of trustees may determine; the reformation of such inmates and their preparation for usefulness being always kept in view. Section 2094. The latitude given to the court by the Juvenile Act in making disposition of delinquent children and the character of the places to which they may be committed do not consist with the claim that the law contemplates imprisonment for crime; some of such places being those to which the state's children who are merely neglected or dependent are committed. Section 1653.

The purpose of the statute is to save minors under the age of 17 years from prosecution and conviction on charges of misdemeanors and crimes, and to relieve them from the consequent stigma attaching thereto; to guard and protect them against themselves and evil-minded persons surrounding them; to protect and train them physically, mentally, and morally. It seeks to benefit not only the child, but the community also, by surrounding the child with better and more·elevating influences and training it in all that counts for good citizenship and usefulness as a member of society. Under it, the state, which, through its appropriate organs, is the guardian of the children within its borders (Van Walters v. Board, 132 Ind. 569, 32 N. E. 568, 18 L. R. A. 431), assumes the custody of the child, imposes wholesome restraints, and performs parental duties, and at a time when the child is not entitled, either by the laws of nature or of the state, to absolute freedom, but is subjected to the restraint and custody of a natural or legally constituted guardian to whom it owes obedience and subjection. It is of the same nature as statutes which authorize compulsory education of children, the binding of them out during minority, the appointment of guardians and trustees to take charge of the property of those who are incapable of managing their own affairs, the confinement of the insane, and the like. The welfare of society requires and justifies such enactments. The statute is neither criminal nor penal in its nature, but an administrative police regulation. State v. Marmouget. A consideration of the acts enumerated which respectively constitute delinquency precludes the thought that it was the legislative intent that they or any of them, when committed by infants within the specified age, should for correctional purposes be treated as a crime; such purposes, as regards such minors, being the only ones contemplated by the statute. The intent to disassociate juvenile from criminal cases is evidenced by the provision of section 1649 that the former shall not be heard, if it can be avoided, in a room used for the trial of the latter, and by the prohibition against the detention of any delinquent child in the county jail pending the disposition of its case. Section 1652. It was not, therefore, necessary that the petitioner should be presented or indicted by a grand jury before he was placed on trial.

Section 10, art. 1, of the Constitution of Ohio, provides that:

"Except in cases of impeachment, and cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and in cases of petit larceny and other minor offenses, no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury."

Delinquency does not fall in the same category as capital or otherwise infamous crimes. The question is not an open one in Ohio. In Prescott .v. State, the grand jury, in pursuance of a statute similar in many respects to the one now under consideration and authorizing it so to do, instead of indicting Prescott, a boy 14 years of age, who was guilty of arson, returned a writing, but not an indictment, that he was guilty of that offense, and that he was vicious and incorrigible and a suitable person to be committed to the guardianship of the directors of the House of Refuge or to the Reform Farm (now the Boys' Industrial School) of Ohio. The court committed him to the latter place, until he became of age or was reformed and duly discharged according to law. It was assigned as error that the state statute was in conflict with section 10, art. 1, of the Constitution of Ohio and with the fifth amendment to the Constitution of the United States, in that it did not provide for presentment or indictment by a grand jury; the two constitutional provisions, in so far as pertinent to the case, being the same. The former contention was overruled because section 10 relates to the rights of the accused in criminal prosecutions and because the case therefore did not come within its provisions; the latter, because the fifth amendment does not apply to state governments and does not operate as a limitation of their power over their own citizens, but is exclusively a restriction upon federal power, as held in Twitchell v. Commonwealth, 7 Wall. 321, 19 L. Ed. 223. The statute involved in the Prescott Case was again upheld in House of Refuge v. Ryan, 37 Ohio St. 197. It was settled in Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 111, 292, 28 L. Ed. 232, that the words "due process of law" in the fourteenth amendment do not necessarily require an indictment by a grand jury even in a prosecution for murder, by a state whose Constitution authorizes such prosecution by information. See, also, McNulty. v. California, 149 U. S. 645, 13 Sup. Ct. 959, 37 L. Ed. 882; Hodgson v. Vermont, 168 U. S. 262, 18 Sup. Ct. 80, 42 L. Ed. 461; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 494, 44 L. Ed. 597. In Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678, Mr. Chief Justice Waite said:

"Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state. Our power over that law is only to determine whether it is in conflict with the supreme law of the land—that is to say, with the Constitution and laws of the United States made in pursuance thereof—or with any treaty made under the authority of the United States. Article 6, Const. Here the state court has decided that the proceeding below was in accordance with the law of the state; and we do not find that to be contrary to the Constitution, or any law or treaty of the United States."

The Legislature of Ohio has not declared "delinquency," as defined by the Juvenile Act, to be a crime. The state's highest judicial tribunal, whenever called upon to review proceedings had under laws

akin to those authorized by the act now in question, has declared such laws to be special, statutory, corrective but not criminal, and constitutional, and indictment before a hearing thereunder not necessary. The Juvenile Act, in its omission to direct that a hearing should be preceded by presentment or indictment, does not conflict with the Constitution of the United States.

[**3**] It is urged that the Juvenile Act is unconstitutional in that the petitioner was denied a trial by jury. Section 5, art. 1, of the state Constitution, declares that the right of trial by jury shall be inviolate, and section 10 of the same article provides that persons accused of crime shall have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, the like of which provision is found in the sixth amendment to the federal Constitution. The argument is unsound because it rests on the fallacy that the petitioner was tried for a crime. The same contention was made in the Prescott Case, but the court held that the accused was not entitled to a trial by jury, and that the law then under consideration was not repugnant to either of the above sections of the state Constitution. The same conclusion was reached in regard to kindred laws in State v. Brown, 50 Minn. 353, 52 N. W. 935, 16 L. R. A. 691, 36 Am. St. Rep. 651; Commonwealth v. Fisher, 213 Pa. 48, 62 Atl. 198, 5 Ann. Cas. 92; In re Sharp, 15 Idaho, 120, 96 Pac. 563, 18 L. R. A. (N. S.) 886; Mill v. Brown, 31 Utah, 473, 88 Pac. 609, 120 Am. St. Rep. 935; Wisconsin Industrial School for Girls v. Clark County, 103 Wis. 651, 179 N. W. 422.

The commission of a crime may set the machinery of the juvenile court in motion, but not to try the delinquent minor for his crime. For that, he must be tried in another forum, after indictment, and by a jury. Nor are we, for the purposes of this case, concerned with the question as to whether the petitioner may yet be tried for the commission of a crime, notwithstanding his hearing before and commitment by the juvenile court. Under a statute which conferred jurisdiction on the juvenile court to try all delinquent children without the intervention of a jury, it was held, in State v. Regan, 125 La. 121, 51 South. 89, that a delinquent minor can be proceeded against only in the juvenile courts, excepting perhaps in capital cases. This view finds support in State v. Howard, 126 La. 354, 52 South. 539, in which an indictment for murder against the defendant, a boy under the age of 17, had been returned into the District Court. On appeal prosecuted from an order refusing to assign his case for trial and referring it to the juvenile court, the Supreme Court held that under the Constitution of that state a person indicted for that crime, the penalty for which is imprisonment at hard labor or death, is entitled to demand and cannot waive a trial by jury, and that the General Assembly did not intend that children under the age of 17, when charged with murder, should be tried under the juvenile act, for the reason that it makes no mention of such cases and cannot be so construed as to result in leaving such children free to commit murder with no attaching consequences other than reformatory discipline during the period of minority. If the petitioner may yet be tried either

for shooting with intent to kill or for a higher crime, it is clear that nothing said or done at his hearing in the juvenile court may be used against him in the criminal court (section 1669)—another statutory provision which runs counter to the theory that he was heard and committed for a crime. But the question which vexed the Louisiana court in State v. Howard does not arise in this case. It was the action of the district court and not of the juvenile court that was reviewed. Moreover, the petitioner in this case was not indicted. Molzan, it is admitted, is dead; but whether he died before the petitioner's hearing and commitment does not appear. The statement of counsel in the course of argument that he died as the result of his wound is not proof of that fact, and the presumption may not be indulged that his death was caused by the infliction of such wound. In Ohio, the punishment for shooting with intent to kill is imprisonment in the penitentiary. A like punishment is meted out for arson, if the property burned exceeds $50 in value. The defendant in the Prescott Case burned a barn valued at $300 and so committed a penitentiary offense. But under the merciful provisions of a beneficent law, he was rightfully tried for incorrigibility by a court without the intervention of a jury. That case, therefore, furnishes a precedent directly in point.

[4] Nor does the correct determination of this case depend upon the constitutionality of section 1659, which provides that when a child under 17 years of age is arrested it shall be taken, not before a justice of the peace or a police judge, but directly before the juvenile judge, or, if taken before a justice of the peace or a police judge, shall be transferred to the juvenile court, which shall proceed to hear and dispose of the case in the same manner as if the child had been brought before the judge in the first instance. Whether the Louisiana juvenile court could have heard the defendant in State v. Howard on the indictment returned against him, when his case was referred to it, without the intervention of a jury and without the institution of proceedings de novo under the Juvenile Act, was not present as a question for decision in that case. It may be that a prudent and thoughtful judge, acting under the Ohio statute, would decline to proceed on an affidavit filed before a justice of the peace or police judge charging not delinquency but necessarily an offense only against a state or municipal law, and might issue a warrant himself, as he may do under section 1648, for the arrest of the child on the charge of delinquency, or await the filing of an affidavit embracing such charge by some person authorized by section 1647 to do so. It may be that the precise meaning of section 1659 is that the juvenile court shall proceed in one or the other of such ways in all referred cases, and such has been the construction placed upon that section by the experienced judge who presides over the juvenile court in this (Franklin) county. In the present instance, the petitioner's case arose in the juvenile court and was not transferred from a justice of the peace or the police court. The mode of procedure in transferred cases need not therefore be decided.

[5] A jury trial is not essential in all cases to due process of law. Montana Co. v. St. Louis Mining, etc., Co., 152 U. S. 160, 171, 14

Sup. Ct. 506, 38 L. Ed. 398; Ex parte Wall, 107 U. S. 265, 289, 2 Sup. Ct. 569, 27 L. Ed. 552; 5 Ency. U. S. Sup. Ct. Rep. 659. The act in question does not provide that the petitioner should have a jury trial, and, considering the nature of the charge, a federal court is therefore powerless to require it. Kennard v. Louisiana, 92 U. S. 480, 23 L. Ed. 478. The privileges and immunities of a citizen of the United States do not include the right of trial by jury in a state court even for a state offense or the right to be exempt from any trial in such case for an infamous crime, unless upon presentment by a grand jury. Maxwell v. Dow, 176 U. S. 581, 594, 20 Sup. Ct. 448, 494, 44 L. Ed. 597. Much less is a party so entitled in a case like this, in which he is not charged with a crime.

[6]. Nor is there any merit in the contention that the petitioner's rights were invaded because the statute did not afford him the opportunity of appealing or prosecuting error from the judgment of the juvenile court. It is a settled rule in Ohio that there can be no appeal or proceedings in error from the judgment of one judicial tribunal to another, unless the right thereto is given by statute. Barr v. Closterman, 2 Ohio Cir. Ct. R. 387; Karb v. State, 54 Ohio St. 383, 43 N. E. 920. It follows, therefore, that a federal court may not hold the statute invalid because it contains no provision for appeal or the prosecution of error. In Andrews v. Swartz, 156 U. S. 272, 15 Sup. Ct. 389, 39 L. Ed. 422, Mr. Justice Harlan, quoting with approval McKane v. Durston, 153 U. S. 684, 687, 14 Sup. Ct. 913, 915 (38 L. Ed. 867), said:

"An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal. A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. It is wholly within the discretion of the state to allow or not to allow such a review. It is therefore clear that the right of appeal may be accorded by the state to the accused upon such terms as in its wisdom may be proper; and whether an appeal should be allowed, and, if so, under what circumstances or on what conditions, are matters for each state to determine for itself."

It is not urged, and cannot be successfully maintained, that a laxer rule obtains in distinctively criminal cases than in those of a civil or quasi criminal nature.

Other authorities touching on some one or more of the points above discussed are: Jarrard v. State, 116 Ind. 98, 17 N. E. 912; In re Knowack, 158 N. Y. 482, 53 N. E. 676, 44 L. R. A. 699; Milwaukee Industrial School v. Supervisor, 40 Wis. 328, 22 Am. Rep. 702; State v. Home Society, 10 N. D. 393, 88 N. W. 273; note to Mill v. Brown, 120 Am. St. Rep. 953.

That the law, when administered by courts wanting in wisdom and wise judicial discretion, may sometimes be wrongfully applied and thereby work injustice to the accused, is not sufficient to vitiate it. The judges who are called upon to preside over juvenile courts are charged with a grave responsibility, which calls for the conscientious exercise of sound discretion. The ultimate success or failure of the law will no doubt depend upon the wisdom with which it is administered.

The writ is denied and the application dismissed.