Bell, J.,
dissenting. I regret that I cannot agree with the majority of the court upon the construction of the statutes involved in this appeal.
Section 215L25, Revised Code, reposes in the Juvenile Court exclusive jurisdiction over a child who has been arrested for a felony. Then Section 2151.26, Revised Code, provides, in substance, that in any case involving a delinquent child who has committed an act which could be a felony if committed by an adult, the juvenile judge may order that such child enter into a recognizance for his appearance before the Court of Common Pleas for such disposition as the Court of Common Pleas is authorized to make for a like act committed by an adult.
Let us examine the procedure to be followed under these statutes. A juvenile is arrested and charged with the crime of rape. Under Section 2151.25, such ju *598 venile must be brought before the Juvenile Court. Then, under Section 2151.26, provided such juvenile is found to be a delinquent, the juvenile judge may order him to appear before the Court of Common Pleas. But, first, the juvenile must be found to be delinquent. And this can be done only after a hearing. It is only after this finding of delinquency that the juvenile judge may exercise some discretion. He may dispose of the matter by committing the juvenile to the appropriate correctional school, release him, or “bind, him over, ” so to speak, to the Court of Common Pleas. In any event, the authority of the Juvenile Court is exhausted at that point. In the event the juvenile judge exercises the third alternative, the responsibility for disposing of the matter lies in the Court of Common Pleas in the same manner as for a like act committed by an adult.
Does the procedure in the instant case, up to this point, follow- that procedure? The docket entries in the Juvenile Court reveal that on December 11, 1953, an affidavit charging delinquency was filed against the defendant, which affidavit was referred to a referee. The docket entry reads: “Hearing held, present at hearing Attorney Slater Gibson, Asst. Prosecutor Anthony Pizza, mother and father Charles Worden. * * * Charles found delinquent and remanded to the Child Study Institute pending investigation and final hearing.” (Emphasis added.)
Citations were then issued, and on January 15, 1954, the following docket entry appears: “Present: Child, father, mother, Atty. Gibson, Sikora, Lassner, Hoffman and Henahan. Hearing had. Court finds act committed or alleged to have been committed by child could be a felony * * *.” (Emphasis added.) The entry then orders him “bound over” to the Court of Common Pleas.
*599 In the Juvenile Court two hearings were held. At the first, the defendant was found to be a delinquent. The second resulted in the “binding over.” At both these hearings not only was the defendant present, but his mother and father and attorney were all present. Certainly, all the juvenile’s rights were amply protected to this point. ’
When a juvenile is bound over “for such disposition as the Court of Common Pleas is authorized to make for a like act committed by an adult,” what can the Court of Common Pleas do? In the ease of an adult charged with a felony, there is only one thing the court can do. It can refer the matter to the Grand Jury. In the instant ease, upon the juvenile being recognized to it the Court of Common Pleas disposed of the matter exactly as it would have done in the case of an adult—by referring the matter to the Grand Jury.
And it is at this point that the beneficent attitude of the Legislature is evidenced by the discretion reposed in the Grand Jury. Section 5141.16, Revised Code, provides:
“If a crime is charged against a youth before a Grand Jury and the charge is supported by sufficient evidence to put him on trial, such youth may be committed by the court to the Boys’ Industrial School on the recommendation of the Grand Jury without presenting an indictment.”
This section, in substantially the same form, has been the law of Ohio since 1857. (See 54 Ohio Laws, 163.) Its obvious intent was the same then as now— to prevent the making of a criminal out of the juvenile and to provide for his schooling and rehabilitation. In my opinion, this section is not inconsistent with Sections 2151.25 and 2151.26, Revised Code. On the *600 contrary, it depends for its applicability upon the compliance first with these sections of the Juvenile Code. Reading it in pari materia with these sections, it can only come into play after the proper arrest, hearings and “binding over” provided for in the Juvenile Code, which proceedings meet the requirements of due process of law.
Nor do I believe a hearing is necessary in either the Common Pleas Court or Juvenile Court after the Grand Jury has made its recommendation. Just prior to “binding him over,” the juvenile judge could have committed the juvenile to the Boys’ Industrial School. In recognizing the juvenile to the Court of Common Pleas, the juvenile judge divested himself of the authority so to do, and, in effect, transferred that authority to the Court of Common Pleas, provided the Grand Jury so recommended. I believe the law as expressed in Prescott v. State, 19 Ohio St., 184, 2 Am. Rep. 388, and Ex Parte Januszewski (C. C. A.), 196 F., 123, is controlling on this point.
The judgments of the lower courts should be affirmed.
Weygandt, C. J., and Stewart, J., concur in the foregoing dissenting opinion.