SKEEL, C. J., and SILBERT, J., concur.

L—, JR., IN RE.

Juvenile Court, Cuyahoga County.

Docket Number 208 836. Decided September 9, 1963.

476

*Mr. Stanley Grendel,* assistant police prosecutor, for the petitioner, Thomas Edward Horgan.

*Mr. Lewis Stokes,* for the minor, L—, Jr.

GAGLIARDO, J.  This cause came on for hearing on the petition of Thomas Edward Horgan, patrolman for the Cleveland Police Department alleging that L—, Jr., a minor, 17 years of age, did on or about July 21, 1963, unlawfully and maliciously assault one Thomas Edward Horgan, an adult male, age 35 years, officer of the Cleveland Police Department in the Chesterfield Playground at East 123rd Street and Chesterfield Avenue, Cleveland, Ohio, by striking him with his fists about the face and body.

The evidence is undisputed that the police officer, Horgan, in company with a fellow officer went to the Chesterfield Playground on that date in response to a citizen's complaint for the purpose of investigating the alleged use of obscene language and interference with the lawful use of the playground on the part of the children of the citizen complainant. L—, Jr., the minor herein, was identified as one of the persons using obscene language and preventing the children from using the swings.  In the course of their investigation, the police officers asked the minor for his name on several different occasions, and the answer was not forthcoming.  The police officers attempted to take him into physical custody, stating that they were going to take him to his parents.  The minor resisted, a scuffle occurred and during the scuffle both the minor and the officer herein were injured and required hospital treatment.

Counsel for the minor argues that since the minor was taken into custody without warrant and was not committing a misdemeanor in the presence of the police officers nor was there any probable cause to believe that the minor had been involved in the commission of a felony, the officers had no right to arrest the minor.  Counsel further points out that a person may resist an unlawful arrest with such force as is necessary to avoid being unlawfully detained.

In the opinion of the court, the law of arrest does not apply to the taking into custody of minors. An arrest as the term is used in criminal law signifies the apprehension or detention of the person of another that he may be forthcoming to answer an alleged or supposed crime. (See 4 Am. Jur., Arrest No. 4.)

Delinquency has not been declared a crime in Ohio and the Ohio Juvenile Act is neither criminal nor penal in its nature, but is an administrative police regulation of a corrective character. (See In re: Januzewski, 196 F., 123.) Proceedings instituted in a Juvenile Court are not criminal in nature nor are they conducted with the objective of convicting a minor of a crime and punishing him, therefor; they are informal hearings through a medium of the Juvenile Court to determine whether the child needs intervention of the state as guardian and protector of his person. (See State v. Shardell, 107 Ohio App., 338.) Section 2151.35, Revised Code, provides: ". . . The judgment rendered by the court under this section shall not impose any of the civil disabilities ordinarily imposed by conviction in that the child is not a criminal by reason of such adjudication."

It therefore follows that the law of arrest in accordance with existing Ohio Statutes does not apply to special statutory proceedings in the Juvenile Court which are civil in nature and have for their purpose the securing for each child under the jurisdiction of the Juvenile Court such care, guidance, and control . . . as will best serve the child's welfare. Section 2151.-55, Revised Code.

The court has been unable to find any authority in Ohio dealing specifically with the question of how a minor may be taken into custody without process. In Commonwealth v. Fisher, 213 Pennsylvania, 48, the court said: ". . . to save a child from becoming a criminal or from continuing to a career of crime, to end in maturer years in public punishment and disgrace, the legislature surely may provide for the salvation of such a child, if its parents or guardian be unable or unwilling to do so, by bringing it into one of the courts of the state without any process at all for the purpose of subjecting it to the state's guardianship and protection. The natural parent needs

no process to temporarily deprive his child of its liberty by confining it in its own home, to save it and to shield it from the consequences or persistence in a career of waywardness; nor is the state, when compelled, as parens patriae to take the place of the father for the same purpose required to adopt any process as a means of placing its hands upon the child to lead it into one of its courts. When the child gets there and the court with the power to save it, determines on its salvation, and not its punishment, it is immaterial how it got there."

In *State* v. *Smith*, 161 A (2d), 520, the Supreme Court of New Jersey in construing a statute providing that any duly appointed police officer may take into custody without process any juvenile who in the opinion of the officer is engaging in conduct defined by law as delinquency said: "such action shall not be construed as an arrest, but shall be deemed a measure to protect the health, morals, and well being of the juvenile."

Section 2151.31, Revised Code, provides: "whenever any officer takes a child into custody, he shall, unless it is impracticable or otherwise ordered by the Juvenile Court accept the written promise of the parent, guardian, or custodian to bring the child to the court at the time fixed. Thereupon such child may be released in the custody of his parent, guardian, or custodian." It further provides: "this section does not forbid any peace officer, police officer, probation officer, or other person authorized by the Juvenile Judge from taking into custody any child who is found violating any law or ordinance or who is reasonably believed to be a fugitive from his parents or justice, or whose surroundings are such as to endanger his health, morals, or welfare." Certainly, the minor herein was found in such surroundings as to endanger his welfare.

It is the court's opinion that a police officer may take a child into protective custody without process where he has reasonable grounds to believe said child to be a delinquent, neglected or dependent child, and it is not necessary that the child be committing a misdemeanor in the officer's presence or that probable cause exist for the officer to believe that the child has been involved in the commission of a felony. In this case the officers were acting in their lawful capacity in answering the citizen's complaint and had not only the right but the duty upon

not receiving the co-operation of the minor to take such minor into protective custody and proceed to restrain him as provided by the statute. This is what the officers were doing and had a right to do.

What happened when the police officers attempted to discharge their duties? The minor resisted and obstructed the officers in the performance of their lawful duty. As a result an unfortunate altercation and scuffle occurred, injuries were inflicted on the minor and patrolman Horgan. It is clear that a minor may be brought to the attention of the Juvenile Court on a petition that merely alleges that he is a delinquent child. It is not necessary that any allegations be spelled out in said petition. It is sufficient that the petition merely allege that the minor is a delinquent. But where a petition is filed, in which, specific allegations are stated and in which it is alleged, as in this matter, that the minor, L—, Jr., did assault police officer Horgan about the face and body by striking him with fists, it is necessary to establish by a preponderance of the evidence that the allegations of the petition are true. (See *State* v. *Griffin*, 93 Ohio App., 299, 106 N. E. [2d], 668.)

The most that the evidence shows in this case is that the minor attempted to run away and jumped out of the door of the crusier and in running away was apprehended and then struck on the head by the officer who used his service revolver. The evidence further shows that the officer sustained a cut on his chin accidentally when in the scuffle he hit the door of the crusier. There is no evidence as to the use of any fists nor did any witness testify that the minor struck the police officer about the face and body with the use of fists in resisting being taken into custody. The evidence clearly failed to establish the allegations of the petition, and, therefore, it is the finding of the court that the minor, L—, Jr., is not a delinquent and that the petition is dismissed. There is some evidence that the minor herein may have been acting in a disorderly manner or resisting and obstructing a police officer in the lawful performance of his duty. If such be the case, a new petition may be filed by the complainant and a hearing on the new petition may be had.