### KENNARD *v.* LOUISIANA EX REL. MORGAN.

The State of Louisiana passed an act entitled "An Act to regulate proceedings in contestations between persons claiming a judicial office."

Sect. 1 provided that "in any case in which a person may have been appointed to the office of judge of any court of this State, and shall have been confirmed by the senate, and commissioned thereto, . . . such commission shall be *prima facie* proof of the right of such person to immediately hold and exercise such office."

Sect. 2 provides "that if any person, being an incumbent of such office, shall refuse to vacate the same, and turn the same over to the person so commissioned, such person so commissioned shall have the right to proceed by *rule* before the court of competent jurisdiction, to have himself declared to be entitled to such office, and to be inducted therein. Such rule shall be taken contradictorily with such incumbent, and shall be made returnable within twenty-four hours, and shall be tried *immediately* without jury, and by preference over all matter or causes depending in such court; . . . and the judgment thereon shall be signed the same day of rendition."

The next section provides that an appeal, if taken, shall be applied for within one day after the rendition of the judgment, and be made returnable to the Supreme Court within two days. The appeal has preference over all other business in that court, and the judgment thereon is final after the expiration of one day. *Held*, that the State, by proceedings under this act, which resulted in a judgment adverse to the title of the plaintiff in error to a certain judicial office, did not, through her judiciary, violate that clause of the Fourteenth Amendment to the Constitution of the United States which declares, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

ERROR to the Supreme Court of the State of Louisiana.

On the 3d of December, 1872, John H. Kennard was, during a recess of the senate of Louisiana, appointed by the governor associate justice of the Supreme Court of Louisiana, in place of W. W. Howe, resigned.

On the 4th of January, 1873, the acting governor commissioned P. H. Morgan associate justice of the Supreme Court, in place of W. W. Howe, resigned. Kennard claimed to hold until the expiration of the next regular session of the legislature.

To settle the disputed title to the office, suit was brought. The courts of Louisiana, proceeding under an act of the legislature of Jan. 15, 1873, determined in favor of Morgan.

The case was then brought here upon the ground that the State of Louisiana acting under this law, through her judiciary, had deprived Kennard of his office without due process of law, in violation of that provision of the Fourteenth Amendment of

the Constitution of the United States which prohibits any State from depriving any person of life, liberty, or property, "without due process of law." The provisions of the law are set forth in the opinion of the court.

*Mr. Thomas J. Semmes, Mr. Robert Mott,* and *Mr. N. P. Chipman,* for the plaintiff in error.

*Mr. Thomas J. Durant, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The sole question presented for our consideration in this case, as stated by the counsel for the plaintiff in error, is, whether the State of Louisiana, acting under the statute of Jan. 15, 1873, through her judiciary, has deprived Kennard of his office without due process of law. It is substantially admitted by counsel in the argument that such is not the case, if it has been done "in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." We accept this as a sufficient definition of the term "due process of law," for the purposes of the present case. The question before us is, not whether the courts below, having jurisdiction of the case and the parties, have followed the law, but whether the law, if followed, would have furnished Kennard the protection guaranteed by the Constitution. Irregularities and mere errors in the proceedings can only be corrected in the State courts. Our authority does not extend beyond an examination of the power of the courts below to proceed at all.

This makes it necessary for us to examine the law under which the proceedings were had, and determine its effect.

It was entitled "An Act to regulate proceedings in contestations between persons claiming a judicial office." Sect. 1 provided, that "in any case in which a person may have been appointed to the office of judge of any court in this State, and shall have been confirmed by the senate and commissioned thereto, . . . such commission shall be *prima facie* proof of the right of such person to immediately hold and exercise such office."

It will thus be seen that the act relates specially to the

judges of the courts of the State, and to the internal regulations of a State in respect to its own officers.

The second section then provides, " that if any person, being an incumbent of such office, shall refuse to vacate the same, and turn the same over to the person so commissioned, such person so commissioned shall have the right to proceed by *rule* before the court of competent jurisdiction, to have himself declared to be entitled to such office, and to be inducted therein. Such rule shall be taken contradictorily with such incumbent, and shall be made returnable within twenty-four hours, and shall be tried immediately without jury, and by preference over all matter or causes depending in such court; . . . and the judgment thereon shall be signed the same day of rendition."

There is here no provision for a technical " citation," so called; but there is, in effect, provision for a rule upon the incumbent to show cause why he refuses to surrender his office, and for service of this rule upon him. The incumbent was, therefore, to be formally called upon by a court of competent jurisdiction to give information to it, in an adversary proceeding against him, of the authority by which he assumed to perform the duties of one of the important offices of the State. He was to be told when and where he must make his answer. The law made it the duty of the court to require this return to be made within twenty-four hours, and it placed the burden of proof upon him. But it required that he should be called upon to present his case before the court could proceed to judgment. He had an opportunity to be heard before he could be condemned. This was " process; " and, when served, it was sufficient to bring the incumbent into court, and to place him within its jurisdiction. In this case, it is evident from the record that the rule was made, and that it was in some form brought to the attention of Kennard; for on the return day he appeared. At first, instead of showing cause why he refused to vacate his office, he objected that he had not been properly cited to appear; but the court adjudged otherwise. He then made known his title to the office; in other words, he showed cause why he refused to vacate. This was, in effect, that he had been commissioned to hold the office till the end of the next session of the Senate, and that time had not arrived.

Upon this he asked a trial by jury. This the court refused, and properly, because the law under which the proceedings were had provided in terms that there should be no such trial. He then went to trial. No delays were asked except such as were granted. Judgment was speedily rendered; but ample time and opportunity were given for deliberation. Due process of law does not necessarily imply delay; and it is certainly no improper interference with the rights of the parties to give such cases as this precedence over the other business in the courts.

The next section provides for an appeal. True, it must be taken within one day after the rendition of the judgment, and is made returnable to the Supreme Court within two days. The proceeding on appeal was given preference over all other business in the Appellate Court, and the judgment upon the appeal was made final after the expiration of one day. Kennard availed himself of this right. He took his appeal, and was heard. The court considered the case, and gave its judgment.

From this it appears that ample provision has been made for the trial of the contestation before a court of competent jurisdiction; for bringing the party against whom the proceeding is had before the court, and notifying him of the case he is required to meet; for giving him an opportunity to be heard in his defence; for the deliberation and judgment of the court; for an appeal from this judgment to the highest court of the State, and for hearing and judgment there. A mere statement of the facts carries with it a complete answer to all the constitutional objections urged against the validity of the act. The remedy provided was certainly speedy; but it could only be enforced by means of orderly proceedings in a court of competent jurisdiction in accordance with rules and forms established for the protection of the rights of the parties. In this particular case, the party complaining not only had the right to be heard, but he was in fact heard, both in the court in which the proceedings were originally instituted, and, upon his appeal, in the highest court of the State.

*Judgment affirmed.*