## 10707.

### STATE *vs.* GOSSETT.

#### (108 S. E. 290)

1. COURTS—POWER TO CALL SPECIAL TERM OF COURT OF GENERAL SESSIONS SUSTAINABLE UNDER CONSTITUTION.—The power to call a special term of the Court of Common Pleas and General Sessions conferred on the Chief Justice of the Supreme Court or the presiding Associate Justice by Code Civ. Proc. 1912, § 33, and Civ. Code 1912, § 3840, is sustainable under the provisions of the Const. Art. 5, § 6, directing the General Assembly to provide by law for the temporary appointment of any person learned in the law to hold either special or regular terms of the Circuit Courts.

2. CONSTITUTIONAL LAW—LEGISLATIVE POWERS AMPLE, EXCEPT WHERE LIMITED.—The general legislative powers of the General Assembly are ample, except where limited by the Constitution.

3. COURTS—POWER TO CALL SPECIAL TERM NOT ABSOLUTE.—The power to order a special term of Court conferred on the Chief Justice of the Supreme Court or the presiding Associate Justice by Code of Civ. Proc. 1912, § 33, and Civ. Code 1912, § 3840, is not an absolute power, but controlled by considerations safeguarding the rights and interests of those whose rights and interests will be determined by the special tribunal.

4. CONSTITUTIONAL LAW—COURTS—ACT PROVIDING FOR CALLING OF SPECIAL TERM OF GENERAL SESSIONS AT INSTANCE OF SOLICITOR A DENIAL OF "DUE PROCESS OF LAW."—Civ. Code 1912, § 3841, providing that, on application to the Governor by the Solicitor of any Circuit, stating that public interest demands an extra term of the Court of General Sessions in any county, etc., it shall be the duty of the Governor to appoint some man learned in the law to hold an extra term of the Court etc., held violative of Const. U. S. Amend. 14, and Const. S. C., Art. 1, § 5, in their guaranties of due process of law.

Before SEASE, J., Abbeville, April, 1920. Reversed and new trial ordered.

Kenneth Gossett indicted for rape and upon conviction appeals.

*Messrs. Bonham & Price* and *M. L. Bonham,* for appellant, cite: *Change of venue where justice cannot be had:* 61 S. C., 251; 8 Iowa, 329; 11 Ala., 206; 11 Tex., 207; 11 Miss., 234. *Special session called under Sec.* 3841 Civ. Code

1912, *which is entirely different from Sec.* 3840, *Id. Sec.* 3841 *gives Governor right to call special term on request of the Solicitor*: 79 S. C., 229. *Appointment of a special Judge is not executive function*:  88 S. C., 208; Secs. 3841-44, 1 Civ. Code 1912, *negative the idea af assigning a regular Judge to hold a special Court.* Provisions of  Sec. 4020, *Civ. Code* 1912, *mandatory*:  63 S. C., 548.  *Motion to quash venire properly made before verdict*: ·66 S. C.. 31;· 73 S. C., 519; 82 S. C., 344; 38 S. C., 270.   *Jury commission can pass on qualification, but not competency of jurors*: 1 Civ. Code 1912, Sec. 4017; 87 S. C., 453.  *Defendant entitled to lawful element of chance in a venire*:  100 S. C., 256.  *And to every protection in the choice of a venire*: 114 S. C., 151 ; 90 S. C., 425; 5 S. C., 429; 96 S. C., 306; 91 S. C., 45; 112 S. C., 95.  *Motion can be made after verdict*: 80 S. C., 347.

*Mr. H. S. Blackwell, Solicitor,* for the respondent, cites: *Irregularities in drawing jury*:  73 S. C., 519; 68 S. C. 494; 2 Hill, 279; 87 S. C., 453; 79 S. C., 187; 38 S. C.,' 270.  *Setting aside names of jurors was to the advantage of defendant*:  77 S. C., 248.  *Change of venue improper*. 16 C. J., 206; 88 Ky., 550; 131 Ill., 223.

August 25, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The defendant, Kenneth Gossett, was indicted with his cousin, John Gossett, at a special term of the Court of General Sessions for Abbeville County, upon the charge of rape.   The crime was alleged to have been committed upon the person of a young woman of that county, near Abbeville, on March 14, 1920.   A true bill was rendered on April 5, 1920.  The trial was entered upon after the usual three days allowed on April 8th.   After the testimony was concluded the presiding Judge directed a verdict of not guilty in favor of defendant, John Gossett, and he

was discharged. The jury rendered a verdict of guilty, with recommendation to mercy, as to the defendant, Kenneth Gossett, and, after the refusal of a motion for a new trial, he was sentenced to imprisonment for 40 years. He has appealed to this Court from said judgment.

Upon the threshhold of this appeal we are confronted with the objection of the appellant to the legality of the Court which condemned him. It is contended that Section 3841, Vol. 1, Code of Laws, A. D., 1912, under which the special Court was ordered and held, is violative of the Fourteenth Amendment to the Constitution of the United States, which provides:

"Nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"

—and of Article 1, Section 5, of the Constitution of South Carolina, which provides:

"Nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

A determination of the issue thus raised requires a statement of the proceedings leading up to the ordering of the special term and the appointment of the presiding Judge, and a consideration of the constitutional and statute law which controls the matter.

On March 18, 1920, four days after the commission of the alleged crime, the Solicitor of the circuit made application in writing to the Governor of the State, stating that the public interest demanded that a special term of the Court of General Sessions for Abbeville County be held, and petitioning that it be called to be held at Abbeville on April 5th. Acting upon that application and petition, the Governor issued an order, dated March 18th, which, after reciting the fact of said application and petition, directed that such special term be held as requested.

Thereupon the Chief Justice of this Court issued an order, which, after reciting the fact that the Governor had ordered the special term as stated, assigned the Honorable Thomas S. Sease, Judge of the Seventh Circuit, as a disengaged Circuit Judge, to hold the Court. Accordingly Judge Sease appeared at the appointed time, opened the Court, organized and charged the grand jury, and submitted to them the indictment against the defendants. The grand jury promptly returned a true bill against both of the defendants, and the other proceedings above narrated followed in due course.

Section 3841, Vol. 1, Code of Laws A. D., 1912, reads thus:

"Upon the application to the Governor by the Solicitor of any circuit stating that the public interest demands an extra term of the Court of General Sessions in any county of the State, or upon the application of the majority of the members of the bar of any county, stating that the civil business demands an extra term of the Court of Common Pleas, it shall be the duty of the Governor to appoint some man, learned in the law, and to be suggested by the Chief Justice of the Supreme Court of the State, to hold an extra term of said Court or Courts in said county, and notify the Clerk of said Court of said appointment."

Prior to the enactment of this statute the process for ordering special terms of Court was as follows:

Section 33 of the Code of Civil Procedure provided (and still provides):

"Special sessions of the Courts of Common Pleas or General Sessions may be held whenever so ordered, either by the Chief Justice or by the Circuit Judge at the time holding the Circuit Court of the county for which the extra term may be ordered, of which extra term such notice shall be given as the Chief Justice or the Circuit Judge so ordering the same may direct. If such extra term of either or both the Courts aforesaid be ordered by the Chief Jus-

tice; he may order any one of the Circuit Judges to hold the same; but if such extra term be ordered by a Circuit Judge, as hereinbefore provided, then such extra term shall be held only by the Circuit Judge so ordering the same." .

Section 3840 of Volume 1 is as follows:

"Whenever any Circuit Judge, pending his assignments to hold the Courts of any circuit shall die, resign, be disabled by illness, or be absent from the State, or in any case of a vacancy in the office of Circuit Judge of any circuit, or in case the Chief Justice or presiding Associate Justice of the Supreme Court shall order a special Court of Common Pleas and General Sessions, or Common Pleas or General Sessions, in any county in this State, upon a satisfactory showing that such special Court is needed, the Chief Justice or presiding Associate Justice may assign any other Circuit Judge disengaged to hold the Courts of such circuits, or to hold such special Court; and in the event that there be no other Circuit Judge disengaged, then the Governor, upon the recommendation of the Supreme Court, or the Chief Justice thereof if the Supreme Court be not in session, shall immediately commission as special Judge such person learned in the law as shall be recommended to hold Courts of such circuit or to hold such special Court for the term only."

The Constitution (Article 5, § 6) provides:

"The General Assembly shall provide by law for the temporary appointment of men learned in the law to hold either special or regular terms of the Circuit Courts, whenever there may be necessity for such appointment."

From these provisions it is apparent that at the time of the passage of the Act of 1900 (Section 3841) the following processes were ordained (and are still of force) with reference to the ordering of special terms:

(1) A special term might be ordered by the Chief Justice or presiding Associate Justice of the Supreme Court, upon a satisfactory showing that such Court was needed.

(2) A special term might be ordered by the Circuit Judge at the time holding the Circuit Court of the county for which the special term was to be ordered.

(3) When the special term should be ordered by the Chief Justice or by the presiding Associate Justice, he was authorized to assign any disengaged Circuit Judge to hold the Court, or if there be none so disengaged, the Supreme Court, if in session, or the Chief Justice, if not, should recommend for appointment as special Judge to hold the Court some person learned in the law, whom the Governor should immediately commission as special Judge for the purpose.

(4) When the special term should be ordered by the Circuit Judge at the time holding Court, it could be held only by the Circuit Judge who may have ordered it.

Thus under the legislation as it stood then, the power to order a special term was vested exclusively in the Chief Justice, the presiding Associate Justice, and the Circuit Judge holding Court at the time for the county in which the special term was to be ordered. The persons authorized to preside as Judge of such special Court were limited to (1) a disengaged Circuit Judge, to be assigned by the Chief Justice or the presiding Associate Justice; (2) a person learned in the law, in the event that there should be no Circuit Judge disengaged, to be commissioned by the Governor as special Judge, upon the recommendation of the Supreme Court, if in session, or of the Chief Justice, if not; (3) the Circuit Judge who may have ordered the Court.

The power thus conferred by Section 33 of the 1, 2 Civil Code and 3840 of the Code of Laws, is easily sustainable under the provisions of the Constitution (Article 5, Section 6) quoted above, as necessarily implied therein, or referable to the general legislative powers of the General Assembly, which are ample, except where limited by the Constitution.

7—S. C. 117

It is not an absolute power, but is controlled by considerations which safeguard the rights and inests of those whose rights and interests will be determined by such tribunal. In the first place, the discretion to be exercised in ordering the special term is vested in the Chief Justice, the supreme custodian of the judicial interests of the State absolutely impartial, non-partisan, unmoved by the clamor of the mob. "Far from the madding crowd's ignoble strife," equally solicitous that harm may not come from the "law's delays" or from impetuous haste; a calm discretion to be exercised. In the next place, it is a discretion to be exercised as a judicial function: "Upon a satisfactory showing that' such special Court is needed." The Chief Justice hears and determines.

There cannot be a question but that the power thus conferred as directed to be exercised in a fair, just, and reasonable manner, affording, in the judicial exercise of discretion by a supreme, impartial, judicial officer, a sure guaranty of due process of law and the equal protection of the laws. The law has been broken and demands prompt punishment of the offender; the law guarantees to the accused a fair trial; the public interest is as much involved in the sanctity of this guaranty as in the swift retribution which should follow crime. A fair trial means a trial before an impartial Judge, an honest jury, and in an atmosphere of judicial calm. It requires a wise, fearless, and impartial mind to harmonize these elements of the public interest, lest in its haste to deal a blow the law may perpetrate a judicial wrong. Happily the law had provided for the just resolution of this difficulty.

Then followed the Act of 1900 (Section 3841), which has thrown to the winds the sensible and just guaranties afforded by the then existing law. It makes no provision for a showing, a hearing, or a determination of the fact that the public interest, which, as we have seen. includes the guaranty of a fair trial to the

accused, demands a special Court. It makes no provision
for the determination of this question, so vital to the rights
of the accused, by an impartial authority. Unlimited, ex-
cept by his conception of what the public interest demands,
which is no limitation at all, the absolute power to set in
motion the machinery which inevitably must result in the
ordering of a special Court is vested in the Solicitor of the
Circuit, the paid prosecutor, representing an adverse inter-
est, necessarily a partisan, a political and not a judicial
officer. Upon his application to the Governor, stating,
without showing, that the public interest demands an extra
term, the Governor has no discretion:

"It shall be the duty of the Governor to appoint some
man learned in the law and to be suggested by the Chief
Justice * * * to hold an extra term. * * * "

The Chief Justice has no discretion in the matter, except
the naming of the special Judge. The momentum of the
Solicitor's ipse dixit is irresistible. A startling difference
between the two procedures—the one, providing for due
application, a presentation of reasons, and a judicial de-
termination by a judicial officer; the other a statement by
a partisan official, without showing or determination of
facts, and without the exercise of discretion by any one. It
enables him, without the slightest consideration for the
rights of the accused, to select his own time for the sacrifice,
close on the heels of the crime, when righteous indignation
has degenerated into a rabble cry of "Crucify him!" Into
that atmosphere he invites the accused to a "fair trial;"
it would be indeed "committere agnum lupo." · ·

The defendant, however guilty in point of fact he may
be, is entitled to be tried in an orderly manner; not only
by an impartial Judge and jury representative of the law-
abiding intelligence of the county, but in a calm judicial
atmosphere where the serene deliberations of those arbiters
of the law and the facts may not be affected by the subtle
psychological influence of the mob, which, though silent

and unseen, is sometimes tremendously felt. It was the influence of the mob that provoked the unrighteous and cowardly judgment of Pilate, who sought to wash his hands of his own blood-guiltiness, and yet delivered the Nazarene for crucifixion. The time of the trial, the circumstances surrounding the Court, the inflamed condition of the public mind, the nature of the crime, are matters of the gravest concern to the defendant and bear heavily upon the opportunity for a fair trial guaranteed to him by the Constitution. Should the public prosecutor, the active, interested adversary of the defendant, be clothed with the absolute authority to prepare the altar for the sacrifice at a time and under circumstances which practically guarantee a sacrifice? Is that due process of law, and affording to the defendant the equal protection of the laws?

Under the section being discussed, the Solicitor is not required to give the grounds of his opinion that the public interest demands a special Court; he is not even required to have such an opinion, except what might be implied from the simple statement to that affect; he has shown no grounds suggesting that the public interest demanded such impetuous haste. The public interest is greater in securing the constitutional rights of the accused than in responding to the public clamor for a victim. What was the reason, therefore, for ordering a special Court? It could not have been the crowded condition of the docket, for the Gossett case was the only one contemplated to be tried, and when that trial was over the Court was functus officio. It could not have been that the business of the Court could not wait the regular term, soon to be held, for the reason that no other case was called. We are constrained to believe that it was called at the initiation of the able and zealous Solicitor, for the purpose of securing the prompt punishment of the perpetrators of an abominable crime, under circumstances which would warrant that expectation, without consideration for the constitutional rights of the accused.

We do not intend the slightest criticism of his conduct in the matter; he had the right under that statute, if it was a valid statute, to do exactly as he did; the criticism is directed against the statute, which permits the occasion for and the selection of the time for holding the Court to be fixed at the arbitrary suggestion of the State's prosecuting officer, without the slightest consideration for the interests of the accused, or of the necessarily prejudicial atmosphere which may, and in this case certainly did, surround the trial. This Court has declared:

"It is greatly to be regretted that it should be necessary to hold a trial in any other than calm and judicial atmosphere." *State v. Bethune,* 93 S. C., 195, 200; 75 S. E., 281

If that be true, it is a right of the accused, as near as may be, that he be tried in such an atmosphere. Should that right be annihilated as the arbitrary will of the prosecuting officer, the representative of the adversary interest? We use the word "arbitrary," not in an offensive sense, but in the sense of the uncontrolled exercise of will, responsible to no one, and operative without even the exercise of discretion. That such a procedure does not conform to the requirements of the Constitution is perfectly clear, from the following definitions of "due process of law:"

"Due process of law requires judicial investigation and determination of the rights." *ExParte Tillman,* 84 S. C. 552, 562; 66 S. E., 1049; 26 L. R. A., (N. S.) 781.

"In the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." *Kennard v. Louisiana,* 92 U. S. 480; 23 L. Ed., 478.

"They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." To give such proceedings any validity, there must be a tribunal competent by its Constitution—that is, by the law of its creation—to pass

upon the subject-matter of the suit." *Pennoyer v. Neff,* 95 U. S., 714; 24 L. Ed., 565.

"In all cases, that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the Courts." *Ex parte Wall,* 107 U. S., 265; 2 Sup. Ct., 569; 27 L. Ed., 552.

"The clause in question means, therefore, that there can be no proceeding against life, liberty, or property, which may result in the deprivation of either, without the observance of these general rules established in our system of jurisprudence for the security of private rights." *Hagar v. Reclamation Dist.,* 111 U. S., 701; 4 Sup. Ct., 663; 28 L. Ed., 569.

"Law in its regular course of administration through Courts of justice, in due process, and, when secured by the law of the State, the constitutional requisition is satisfied." *Caldwell v. Texas,* 137 U. S., 692; 11 Sup. Ct., 224; 34 L. Ed., 816.

And due process is so secured by laws operating on all alike, and not subjecting "the individual to the arbitrary exercise of the powers of government, unrestricted by the established principles of private right and distributive justice." *Bank v. Oakley,* 4 Wheat, 235; 4 L. Ed., 559.

"It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." *Reetz v. Michigan,* 188 U. S., 505; 23 Sup. Ct., 390; 47 L. Ed., 563.

The circumstances of this trial demonstrate beyond a doubt that the defendant, under the operations of this section which we are considering, was not convicted by due process of law and was denied the equal protection of the laws. We refer to them, not so much for the purpose

of granting the defendant a new trial upon that ground, but for the purpose of demonstrating the operation of the procedure under Section 3841, and to sustain our conclusion that, at least so far as the criminal Court is concerned, it is violative of the constitutional provisions that have been quoted.

The crime is alleged to have been committed on March 14th; on March 16th, two other young men, not the defendants, were arrested at Greenwood, charged with the crime; they were not carried to the Abbeville jail, but were rushed to the State penitentiary in Columbia for safekeeping; on March 16th, the young women involved went to Columbia to identify the prisoners; they stated that the young men arrested were not the guilty parties; on March 17th the defendants were arrested, one at his home in Honea Path, Anderson County, and the other in Greenville; they were taken to Anderson, not Abbeville, and were identified by the young women; thence they were taken, not to Abbeville, but by way of Greenville and Spartanburg, to the State penitentiary; on March 18th the Solicitor made application for a special Court, himself fixing the date, and on the same day the Governor ordered a special Court to be held at Abbeville, on April 5th; on March 20th the Chief Justice designated Judge Sease to hold the Court. The defendants were detained in the penitentiary for about a week, and were then transferred, not to Abbeville, but to Greenville jail, for convenient access by their counsel, attorneys of Greenville; there they were kept until the morning of the opening of the special Court at Abbbeville, when they were transferred to the Abbeville jail.  The foreman of the grand jury of Abbeville County made affidavit to the effect that the defendants could not safely be brought to Abbeville County on account of prevailing hot sentiment; the sheriff of the county recommended to the Governor military protection during the trial that was approaching; more than 100 affidavits were sub-

mitted by the defendants upon their motion for a change
of venue on the ground that a fair trial could not be had.
The motion was refused. The defendants moved for a
continuance of the case upon the ground that defendants
had not had sufficient time to prepare their defense, their
counsel residing in another county, and the defendants
being a part of the time in the State penitentiary, and that
every member of the bar of Abbeville had been approached
for the purpose of assistance, but without avail; the motion
was refused. The failure to employ local assistance in the
defense among the members of the bar at Abbeville is a
striking index of the condition of public sentiment.

Notwithstanding the fact that Section 4020 of the Code
of Laws requires that ten days' notice of the drawing of
the jury shall be given, only five days had been given. A
motion to quash the venue was made upon this ground
and refused. If the statutory notice had been given, the
Court could not have been held at the appointed time. But
it had to be held, and the slight matter of a statutory reg-
ulation must not stand in the way. If the special Court
had been legally ordered, of course every other case upon
the calendar could have been tried. The trial of no other
case than the Gossett case was suggested. The Court was
ordered to try the Gossetts. A side light on the drawing
of the jury clearly shows this. The names of two jurors
drawn were discarded—the one upon the ground that he
was related to the prosecutrix in the Gossett case; the
other upon the ground that he was related to the young
woman who was a companion of the prosecutrix upon the
occasion of the alleged crime. This may have presented a
ground for objection to the competency of these jurors
upon the trial of the case, but it presented no ground for
excluding them from the panel, which in contemplation
of law was drawn to try every case then on the docket.
Their exclusion is conclusive of the purpose which was in

the minds of all concerned, of the ordering of the special Court—to try the Gossetts.

A striking circumstance occurred during the trial which reflects the fully appreciated temper of the spectators and their sullen determination that justice as they conceive .it should not be balked. At the close of the testimony the Circuit Judge directed a verdict in favor of one of the defendants, John Gossett; the record contains this statement:

"As soon as this motion was granted, under arrangement of the Court and Court officials, John Gossett was handcuffed as though he were being taken back to jail and quietly slipped out the rear entrance of the courthouse and placed in an automobile and sent out of the county with all possible speed."

We are convinced that the procedure provided in this section is a bald concession to the spirit of mob law, and presents the spectacle of the law, strong and mighty, bowing to the despotism of the mob, which has been declared to be greater than the tyranny of a despot. It provides a miserable compromise with lynch law, enabling the law to bargain with the mob to stay its hand, and allow the Court, under the forms of law, to accomplish what is equally as reprehensible, a judicial lynching. It is notorious that such bargains have been made; the angry mob has been appeased by the promise of a quick special Court to try the offender, under circumstances that render his conviction inevitable.

There can be no compromise with the spirit of lynching for any crime. Those who compose such a mob are themselves without the pale of law, and commit a crime, not only against the victim of their vengeance, but against the majesty of the law. They are not entitled to recognition as legitimate parties to a compact. They trample under their dusty feet the pandects of our civilization and spit upon the sacred rights of the individual. The law ought

to be, and is, strong enough to treat them as criminals. It seems hardly necessary to say that, in the discussion and decision of this question, the Court is entirely impersonal, without the slightest purpose to reflect upon the character or conduct of the Solicitor of the Eighth Circuit, whose ability and character render such reflection impossible.

The Court deems it unnecessary to consider the other questions raised by the exceptions.

The judgment of this Court is that the judgment appealed from be reversed, and that the case be remanded to the Court of General Sessions for Abbeville County for proceedings conformable to law.