THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
PEDRO MATOS MATOS, Defendant and Appellant.

No. 15973.   Submitted March 6, 1958.—Decided September 10, 1959.

*Luis A. Archilla Laugier* for appellant.   *Hiram R. Cancio, Secretary of Justice (J. B. Fernández Badillo, former Secretary of Justice,* on the brief), *Arturo Estrella, Assistant Secretary of Justice, Alfredo Archilla Guenard* and *Héctor R. Orlandi Gómez, Fiscal* and *Assistant Fiscal of the Supreme Court, respectively,* for appellee.

.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On May 15, 1952 the district attorney filed an information against Pedro Matos Matos and Fundador Rodríguez Viruet, for the violation of § 192 of the Penal Code,[1] consisting in that the afore-mentioned defendants Pedro Matos Matos and Fundador Rodríguez Viruet "on or about March 16, 1952 and in Utuado, Puerto Rico . . . acting then and there in common agreement, illegally, voluntarily, maliciously, and criminally, interfered with and impeded the members of the board of registration of the college of registration No. 3, in the election precincts of Utuado, Puerto Rico, in the performance of their duties, illegally irrupting and penetrating into said college at a few minutes before 1:00 in the afternoon, that is, when the registration of future electors was about to commence, said defendants provoking then and there a strong and heated discussion, assuming a hostile and aggressive attitude, interfering with and impeding the work of the board of registration in the performance of their duties to commence the registration of future electors at 1:00 in the afternoon, creating a state of disorder as a result of which a number of people who left the place where the afore-mentioned board of registration was legally established were not able to register, delaying and paralyzing the commencement of the registration process for more than half an hour."

The defendants were jointly tried by a jury. It rendered verdict acquitting Fundador Rodríguez Viruet, but did not reach a verdict as to Pedro Matos Matos, and for that reason the jury was dissolved.

A new trial was held and Matos Matos was found guilty by the jury which sat in the case, but at the request of the

---

[1] Section 192 of the Penal Code, 33 L.P.R.A. § 583, provides:

"If any person shall interfere with or impede the members of the board of registration in any way in the performance of their duties, such person shall be deemed guilty of a felony and upon conviction thereof shall be imprisoned in the penitentiary for not less than one nor more than five years."

defendant, the court ordered a new trial. This third trial, commenced on June 10, 1954 before a new jury, defendant's counsel being Mr. Francisco M. Susoni Lens and Mr. Tomás Torres Cortés, who were the only attorneys who intervened from the commencement of the prosecution until they withdrew from the case when the evidence of the defense was being conducted and due to certain incidents which arose between them and the presiding judge. The afore-mentioned attorneys were sentenced to thirty days in jail for contempt and the judge appointed new counsel for the defendant.

After receiving the instructions the jury found the defendant guilty of the offense charged and the judge sentenced him to imprisonment for not less than one year nor more than two in the penitentiary at hard labor. Against said judgment the defendant filed the present appeal assigning several errors. In view of the decision reached, we find it unnecessary to discuss some of them.

█ Several incidents occurred during the trial on which many of the assignments are based.

Some of these incidents have to do with Fundador Rodríguez Viruet, who was the principal witness for the defense. While Mr. Susoni was cross-examining a witness for the prosecution, the following took place:

"Upon examination by the Judge, she testified:
"Q. Do you know Fundador?
"A. I saw him that day for the first time.
"Upon examination by Mr. Susoni, she testified:
"Q. Have you seen him again?
"A. Yes, sir.
"Q. Do you see him here now?
"A. Yes, sir.
"Q. Where is he?
"A. Over there.
"The Court: Why is Fundador in the courtroom if he was called as a witness?
"Mr. Susoni: I apologize to Your Honor because I had my back turned, and now that Your Honor has made that state-

ment, I know he is here, and I gave a note to the marshal to place the witnesses under the rules of the Court as soon as they arrived.

"The Court: He can not ask the name of every person who enters the room, nor can he forbid them to enter the courtroom. *That depends on the purpose and the morals of the person who is called as a witness. He has testified in other cases and he knows that the witnesses do not go into the courtroom to hear the other witnesses testify, and he should know his responsibility as a witness.*

"Mr. Torres Cortés: We are going to take exception to Your Honor's statement.

"The Court: Exception is taken. But you can not argue it in the presence of the jury.

"Marshal: I do not know the witnesses. But if . . .

"The Court: The Marshal need not explain. The gentleman came in. The attorney has apologized and this gentleman should be placed under the rules of the Court.

"Fundador Rodríguez Viruet: Your Honor, I . . .

"The Court: You can not speak and interrupt the work of the Court. You are sentenced by the Court to pay a five-dollar fine or serve five days in jail. Marshal, take care of the defendant. The ladies and gentlemen of the jury are going to retire for a moment while the attorney raises a question of law." (Italics ours.) (Tr. Ev. at 112 to 114, first piece.)

When the defense's turn to present its evidence arrived, it called on witness Fundador Rodríguez Viruet. After the direct examination of this witness, and while the district attorney was cross-examining him, the following incident occurred, according to the record:

"Q. Is Vicente Juan Medina here as witness under the rules of the Court?

"A. Yes, sir.

"Q. Is he the same person you have stated you saw twice on March 16, 1952, first, in the morning at your Party committee, and later after four in the afternoon?

"A. Yes, sir.

"Q. And is that gentleman whom you saw twice on March 16 the same one who is subject to the rules of the Court as a witness for the defense, or is that someone else?

"A. He is the same person because I am completely normal.

"Q. Mr. Fundador Viruet . . .

"A. Rodríguez Viruet, please.

"The Court: *Will you please leave your hands alone, stop gesturing with your hand; that is not the way to behave in Court.*

"Mr. Susoni: We wish to take exception to the statements of the Court.

"The Court: *Let it be stated in the record that the witness has raised the left hand and with the index finger has pointed to the district attorney in a rude and threatening manner, telling him that that is not his family name; that the Court has been compelled to call the witness' attention as it would to any person who does not behave properly in a courtroom.*

"Mr. Susoni: We respectfully take exception."
(Italics ours.)   (Tr. Ev. at 284 to 285, first piece.)

The judge interrupted frequently, questioning the witnesses affecting the defendant prejudicially in a way that we have censured in other cases. For example, let us see the following incident. While William Pérez, a witness for the defense was on the stand, the judge raising his voice questioned the witness claiming he was guiding him and accused him of eluding the questions without answering them. The attorneys protested against the attitude of the judge and took an exception, which gave rise to another incident between the magistrate and the afore-mentioned attorneys. Let us return to the record.

"Upon examination by the Court, he testified:

"Q. For what reason?

"A. The people inside the premises, the commotion, the agglomeration itself, the people who were around the tables.

"Q. What about the discussion?

"A. At that moment there was none.

"Q. Was there any when the discussion was going on?

"A. That was before one o'clock.

"Q. Between whom was the discussion? The discussion to which you refer there, which the district attorney says that you mentioned?

"A. It was a matter that came up, because Mr. Matos did not complete the petition; but then he had gone out.

"Q. With whom did he argue? With you?

"A. No, sir.

"Q. *With whom did he argue? I am asking you, with whom did Mr. Matos argue, if he did argue. Do not evade my question. Please answer.*

"A. *Let me explain.*

"Q. *With whom did Mr. Matos argue, with whom?*

"Mr. Susoni: If Your Honor will allow me.

"The Court: Colleagues, please do not interrupt the Court.

"Q. *With whom was Mr. Matos arguing? I am asking you to explain. Then you may give an explanation.*

"A. I do not recall.

"Q. You do not recall with whom he was arguing?

"A. No, sir.

"Mr. Susoni: We wish to take exception to the manner in which the Magistrate has conducted the cross-examination. We believe that the witness is being intimidated in such a way that it is impossible for him to give a normal, calm, and fair testimony. The record shows that he has never shown disrespect to Your Honor. However, the loud and impulsive tone of Your Honor tends to frighten those persons who are not normally used to these proceedings.

"The Court: For the purpose of the record, *I wish to say that colleague Susoni has deviated from a reality, from the truth, which the attorneys and gentlemen are bound to tell, by insinuating that the Judge has tried to intimidate the witness. If the Judge has raised his voice, it has been for the purpose of orientating the witness and asking him with whom Pedro Matos Matos was arguing.* I am sorry that colleague Susoni has deviated from the facts in such a regrettable way, because I would not dare intimidate anyone and *much less when I preside a court. What I want is the truth from everyone, whether it affects or benefits one of the parties.*

"Mr. Susoni Lens: We respectfully take exception." (Italics ours.) (Tr. Ev. at 303 to 305, first piece.)

Furthermore, during the trial the judge commented on the conduct of defendant's counsel, which had a prejudicial effect on the latter's cause.

The judge on one occasion, upon referring to a request made by defendant's counsel to have the notes of a former trial transcribed, charged that counsel's request was a "dilatory tactic." When the defense took an exception to the judge's words, the latter, addressing the jury, said that "you do not have to judge the cases by the honesty or dishonesty, or by the low or high morals of the defendant's representatives." Upon hearing these statements attorney Torres Cortés stood up to take an exception. The judge ordered him to be seated and threatened to punish him for contempt. He then ordered the jury to withdraw and proceeded to convict Torres Cortés for contempt.[2]

The judge's statements on the honesty or dishonesty, the high or low morals of the defendant's representatives, must be interpreted on the basis of what the judge had formerly stated in qualifying the afore-mentioned attorney's conduct as a "dilatory tactic."

Later, when Mr. Susoni took exception to the manner in which the judge had cross-examined witness William Pérez, the judge stated before the jury that "colleague Susoni has deviated from a reality, from the truth, which the attorneys and gentlemen are bound to tell, by insinuating that the Judge has tried to intimidate the witness."

The judge also blamed the defendant and the new attorneys appointed by the Court of not being duly prepared to conduct a direct examination of the defendant. Mr. Feliú Pesquera asked the defendant a general question and when the district attorney objected, the attorney explained he was asking the question in that manner because he had not heard the witnesses of the State testify. To that the judge answered that it was "a situation brought about by the party himself." When the attorney insisted that he had not been able to read the complete stenographic record of the trial,

---

[2] Since after attorneys Susoni and Torres Cortés withdrew from the case the jury was not kept under custody of the marshal, it is improbable that the jury did not learn of Torres Cortés' conviction for contempt.

the judge answered: "That is the attorney's fault, and of the others, if he has been unable to prepare himself, because they've had it for several days."

We agree that many of these incidents taken separately would not be sufficient ground to set aside the verdict. However, the cumulative effect of all the incidents taken together with others of less importance which we have not mentioned, tended to prejudice the defendant's cause before the jury and deprived him of a just and fair trial in an atmosphere of judicial calm which should prevail in every criminal prosecution.

▬ Every person charged with a public crime has an absolute right to a just and fair trial. According to the legal doctrine this means that the defendant has the right to be tried before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. The trial judge has the responsibility of seeing that defendant's right is not impaired. He should conduct himself with utmost caution in order to prevent that such right be nullified by any act of his. *State* v. *Gossett*, 108 S.E. 290. In a criminal case, a trial judge must act in such a manner as to impress the jury that he is impartial and does not favor any of the parties. *People* v. *Díaz*, 74 P.R.R. 348, 367. The trial judge occupies a privileged position. The jury feels great respect for his opinion and is easily influenced by any suggestion coming from him. As a result, the trial judge must abstain from any conduct or language which tends to discredit or prejudice the accused or his cause with the jury. *State* v. *Simpson*, 64 S.E.2d 568; *State* v. *Bryant*, 126 S.E. 107. A hostile attitude of a trial judge towards the defendant or his witnesses may easily influence the verdict of the jury. *People* v. *Marino*, 111 N.E.2d 534, 537. However, the mere possibility that a defendant may have suffered prejudice from the conduct or language of a trial judge is not sufficient to overthrow an

504

adverse verdict.[3]  The test to determine whether or not the trial judge deprived the accused of his right to a just and fair trial by improper comments is the probable effect of the language upon the jury.  *People* v. *Bartolomei*, 70 P.R.R. 664.  "This is so, as stated in *State* v. *Carter*, 65 S.E.2d 9, 10 and 11, because, 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.  *Towne* v. *Eisner*, 245 U.S. 418, 38 S. Ct. 158, 159, 62 L. Ed. 372.' "

█  After considering all the circumstances of this case, we have to conclude that the statements and comments of the trial judge on the reputation of defendant's witnesses and counsel, had the probable effect of influencing in the adverse verdict of the jury.  We say the same as to the manner in which the judge questioned some of defense's witnesses.  See *People* v. *Acevedo*, 35 P.R.R. 887, 890 and *People* v. *Bartolomei, supra.*

The verdict of conviction shall be set aside, the judgment appealed from shall be reversed and the case remanded for a new trial.

Mr. Justice Belaval did not participate herein.

---

[3] See cases cited to this effect in *People* v. *Díaz, supra.*